WESTERN & SOUTHERN LIFE INSURANCE COMPANY
v. SHELBY.

[No. 14,836. Filed February 15, 1935. Rehearing denied May 10, 1935. Petition to transfer denied October 23, 1935.]

*William W. Kummings, Samuel D. Miller, Sidney S. Miller,* and *George R. Jeffrey,* for appellant.

*Roscoe Hollingsworth* and *Foley & Foley,* for appellee.

WOOD, J.—Appellee, as the named beneficiary in a policy of life insurance issued by appellant upon the

life of one Grover Cleveland Shelby, recovered judgment against appellant for the proceeds of said policy as such beneficiary.

Appellant appeals from this judgment. The errors properly assigned for reversal are, the overruling of appellant's demurrer to appellee's complaint, and the overruling of its motion for a new trial. The demurrer questioned the sufficiency of the facts in the complaint to state a cause of action. The memoranda filed in support thereof was upon the theory, expressed in various ways, that the appellee could not recover because of the violation by the insured of a clause in the policy exempting the appellant from liability for his death by suicide within two years from the date on which the insurance began. The only specifications for a new trial discussed and not waived by appellant in its brief are that the decision of the court is not sustained by sufficient evidence, that the decision of the court is contrary to law, and error of the court in admitting in evidence appellee's exhibit B, being a certain policy of life insurance issued by appellant on the life of insured, which policy was dated August 17, 1927. Inasmuch as the conclusion reached upon either one of the errors presented will determine the rights of the parties, we will consider them together.

The whole controversy narrows down to the answer to be given to one question, namely: When a whole life insurance policy has been issued in lieu of a short term policy, as in this case, do the two policies form a single contract, so that exemption from liability, by reason of a suicide clause contained in the whole life policy, will be determined from the date of the short term policy?

All the facts were stipulated by the parties, each reserving the right to object to the legal competency of any part of such stipulation.

Those essential to a consideration of the legal principles involved, as disclosed by the record, are as follows: On August 17, 1927, pursuant to a written application therefor, dated August 15, 1927, appellant issued its policy No. 322837-A to Grover Cleveland Shelby, under the terms of which it insured his life in the sum of $10,000 for a term of five years. Among the general conditions contained in the policy were the following:

"1. This policy and the application therefor, a true copy of which is endorsed hereon or securely attached hereto, constitute the entire contract between the parties, and shall be incontestable after two years from its date, except for non-payment of premiums.

"2. All statements made by the insured in the application for this Policy shall, in the absence of fraud, be deemed representations, and not warranties, and no such statement shall avoid the Policy, unless it is contained in the written application.

"5. In case of self-destruction *within two years from the date on which this insurance begins,* whether the insured be sane or insane, the amount of Insurance under this policy shall be the amount of premiums paid thereon.

"CONVERTIBLE—If this policy is legally surrendered to the Company at any time within 4 years from its date while in full force and before any default in payment of premium, and before the insured has attained the age of 50 years, it may at any anniversary of its date upon written application of the insured, be exchanged, without medical examination, for any level premium Life or Endowment policy then being issued by the Company, for an amount not exceeding that insured by this policy, but not including any Disability Insurance or Double Indemnity or any hazard not specifically covered by this policy.

"Such new policy shall, at the option of the insured, either: First, bear the date of issue and age of the insured at the time of such exchange and provide for the payment of annual level premiums thereon at the rates then charged by the Company for such insurance at the then attained age of the insured, or; Second, bear the same date of issue and age of insured as this policy and provide for the payment, after such exchange, of annual level premiums for such insurance at the rates charged by the Company at the time of conversion for such Insurance at the age of insured at the issue of this policy, provided, however, that the insured may select this second option only upon payment to the Company of the differences between the premiums theretofore paid hereon for an amount of insurance equaling that of the new policy and the premiums that would have been required under the new policy, had it been issued at the date of this policy, with five per cent interest per annum compounded.

"Such exchange can be effected only in the manner herein provided." (Our italics.)

August 9, 1930, the insured executed a written request for a change of policy, pursuant to the terms of the five year policy. This request was as follows:

"REQUEST FOR CHANGE OF POLICY.

The Western & Southern Life Insurance Company of Cincinnati, Ohio, is hereby requested to make the following change in Policy No. 322837-A: from five year term to commercial whole life at age 43, by alteration or indorsement of original Policy or by issuing new policy of same number and date in place thereof; the statements and agreements in the application for the original Policy to remain in full force and to apply to new Policy.

Dated at Lebanon, Indiana, August 9, 1930."

Agreeable to said request, and upon payment of the first semi-annual premium in the sum of $140.80, appellant issued and delivered to the insured, its commercial whole life policy No. 449632-A dated August 17, 1930, insuring his life in the sum of $10,000, during the term of his natural life, designating appellee as beneficiary therein. The five-year term policy was then surrendered to appellant. The insured paid the semi-annual premium on February 19, 1931. The commercial whole life policy was issued on the original application signed by the insured for the five-year policy, and without further or additional physical examinations of insured. Copies of this application, report of the medical examination, and request for change of policy were attached to and made part of the commercial whole life policy.

The general conditions of this policy were in identically the same language as those contained in the five-year term policy. Provisions relating to income options, right of reinstatement, and change of beneficiary were identical in both policies, except the right of reinstatement in the whole life policy required the payment or renewal of any indebtedness existing at the time of default. The whole life policy contained provisions for valuation of the policy as security for a loan and for valuation if premiums were discontinued as required by Sec. 39-801, Burns 1933, in policies of that character. The insured committed suicide June 6, 1931. June 9, 1931, the appellee submitted proofs of death on forms furnished by the appellant. The appellant refused to pay appellee the sum of $10,000, but tendered him the sum of $281.60, being the amount of premiums which had been paid to it under said commercial whole life policy, this tender was refused; thereafter the appellant paid the amount of the semi-annual premiums re-

ceived by it on this policy, together with interest at the rate of six per cent per annum from the date of their respective payments, amounting in the aggregate to $313.10, to the clerk of the Montgomery Circuit Court, for the use and benefit of appellee, which sum the appellee refused to accept from the clerk.

The question presented by the record in the instant case is one of first impression in this state. Although we have made diligent search among the authorities and the decisions of other jurisdictions for ruling precedents to aid us, in addition to those cited and relied upon by counsel for the respective parties, where the courts have had an analogous question before them, our labors have been rewarded with the discovery of very little information. While there is apparent conflict in the few authorities having some similarity to the case at bar, we do not think this is due to conflicting principles of law, but rather to the application of the same principles of law to a different set of facts in each case.

The appellant cites and relies upon the case of *Gans* v. *Aetna Life Ins. Company* (1915), 214 N. Y. 326, 108 N. E. 443, L. R. A. 1915F 703, to sustain its contention. The facts in that case, so far as it is necessary to state them, as they appear in the opinion, were that on April 5, 1907, the company issued a "term policy" insuring the life of one Hockstadter for the period of five years, "except (a) upon the expiration of the policy it might be renewed and continued for successive terms of five years each, until the insured had passed the insuring age of sixty years, by paying premiums as prescribed by an included table, or (b) upon any anniversary of its date it might 'be exchanged without medical re-examination for a new policy upon any plan then in use by said company, on payment of the premium required for such new policy for the insuring age then attained by the insured,' or (c) be exchanged at any time within

five years from its date for a then lawful policy of any kind issued April 5, 1907, by the company, to be dated April 5, 1907, and issued at the insured's age at that date, on payment of a sum equal to the difference between the aggregate of the premiums then actually paid and the aggregate of the premiums the substituted policy would have earned from April 5, 1907, with interest, provided in either case of exchanged policies 'the premiums required by such new policy shall be paid on the date stipulated for payment of premiums under this policy; that the amount of insurance shall not be increased or the premium rate be less than required by this policy; and that application for such new policy be made and this policy returned' to the company before a default in premium and before its expiration.

"On April 3, 1912, the insured made, under the second above option, a written application to the company for a new policy, and therein agreed that the statements and answers in the application for the term policy 'shall be the basis for the new contract or policy herein applied for and form a part of the same, except that the kind of policy, amount of same, and the premium thereon shall be specified below.' The application stated the kind of policy desired, and certified in regard to the physical condition of the applicant, and requested 'that the new policy contain the provision for disability.' In accord with the application for the 'new contract or policy,' which was made a part of it, the policy sued upon was issued."

Both policies contained a suicide clause reading as follows: "If the insured shall commit suicide within one year from the date hereof, while sane or insane, this policy shall be null and void." The insured did commit suicide December 20, 1912.

The question was, did the two policies of insurance form a single contract under date of April 5, 1907? In

answering this question the court in its opinion said (p. 331) : "The policy in suit is dated April 5, 1912, and in it the insured and the defendant said: 'If the insured shall commit suicide within one year from the date hereof, while sane or insane, this policy shall be null and void.' This is a rigid and certain agreement, from which no doubt or hesitation as to its meaning can spring. They also said: 'This policy and the application herefor constitute the entire contract between the parties hereto.' It is and must be conceded that there is no language or stipulation within the policy or the application for it which conflicts with or effects the stipulations above quoted. A reference to the application in consideration of which the policy was issued is a strong confirmation of the integrity of those stipulations. It applies for a 'new contract or policy,' specifying the kind desired. The policy of April 5, 1912, is in form and substance an independent, complete and isolated contract. It expresses no dependence on or connection with the term policy. Nor was it a restatement of the contents of the term policy. The premium to be paid, and the rights, privileges, advantages, and obligations of both parties under it, are essentially and substantially different from those under the term policy. The contents of the policy do not disclose or suggest a reason why the plain meaning of the stipulation should be ignored or nullified." And it was held that the policies were separate and independent contracts.

To sustain his contention, appellee cites and relies upon the case of *Silliman* v. *International Life Ins. Company* (1914), 131 Tenn. 303, 174 S. W. 1131, L. R. A. 1915F 707. From the facts stated in the opinion it appears that on January 12, 1910, the Tennessee Life Insurance Company, whose business was later taken over by the International Life Insurance Company, issued an

insurance policy to one Silliman, insuring his life for the period of five years. It provided that it should become incontestable after a period of one year from date of issue, except for non-payment of premiums. "It contained also the following 'privilege of exchange': 'This policy is issued for a term of five years from the date hereof and no longer, but on any anniversary of this policy and while in force, the company will, upon its surrender, grant in exchange therefor, without medical re-examination, a new policy on any plan then written for an amount not greater than the sum insured by this policy, and at the rate of premium required for this (the) kind of policy chosen at the age then attained, or at the premium rate required for the original age and date, upon the payment of the difference in premiums with 6 per cent interest per annum.'

"The policy contained likewise the following condition: 'In case of suicide committed while sane or insane within one year of date hereof, the liability of the company shall not exceed the amount of the premiums paid on this policy.' "

January 12, 1914, pursuant to a demand made by Silliman as provided in the short term policy, a whole life policy was issued to him. No new application was made for this policy, and the original application made to the Tennessee Life Insurance Company, or a photographic copy of the same was attached to the new policy by the insurance company. There was also attached to the policy a rider in these words: "This policy was issued in exchange for and in lieu of Tennessee Life policy No. 757, issued by the Tennessee Life Insurance Company." It contained the following clause on the subject of suicide: "In case of suicide committed while sane or insane within one year from the date on which the insurance begins, the limit of the recovery here-

under shall be the premiums paid." July 1, 1914, the insured committed suicide.

In sustaining the judgment of the lower court in overruling a demurrer to a bill seeking to recover the amount of the policy, the Supreme Court of Tennessee said (p. 308) : "It seems to us quite clear under the facts stated the new policy was but a continuation of the same insurance contract. It was based upon the old application and the old medical examination, and the new terms were in strict accord with the provisions of the first policy, granting to the insured the right to make just such a selection to take the place of the original form. The same may be said of the higher rate of premium paid. We are unable to see how a different result can be based on the circumstance that the premium was fixed at the rate applicable to the age the insured had attained when the new policy was issued, that is, forty-eight years, rather than at the old rate, supplemented by the difference in cash with six per cent added. The two rates meant the same thing to the company, being but different expressions of the same price of insurance, but the choice of either was addressed simply to the convenience of the insured."

Then the court reviewed the facts in the Gans Case, *supra,* and, continuing its opinion, said (p. 312) : "The differences between the policies sued on in the *Gans Case* and that before us are now apparent. Not only is there nothing to show that the policy of 1914 is an 'independent, complete, and isolated contract,' expressing no dependence on or connection with the term policy, but, on the contrary, it is expressly shown that they are connected, and that the second was issued because of and in compliance with the requirements of the first. Again, so far from there having been filed an application for a 'new contract or policy,' no application was filed at all, but simply a demand was made that another

form of policy be issued in compliance with the agree-ment therefor in the first policy. It is also shown that this demand was sought to be evaded by the company through its suggestion for a new application and a new health certificate, that this suggestion was repudiated by the insured, and his demand for compliance with the contract renewed, accompanied by a pointed reference to the fact that he had brought the matter to the atten-tion of the insurance department of the State, and there-upon the defendant yielded and issued the policy which the insured demanded as a compliance with the contract contained in the term policy, and that defendant had attached to its policy, the application filed with the term policy, and a rider showing that its policy was issued 'in exchange for and in lieu of' the term policy.

"Furthermore, the suicide clause in the policy sued on does not refer to the date of this policy, but *within one year from the date on which the insurance begins.*' It is true that if the policy stood alone, that 'this insur-ance' would have to be construed as referring to the date of the policy; but it appearing from what we have already said that the dominant purpose was to carry out the contract embraced in the policy of 1910, this clause must be held to apply to the date of that policy, since it was then that 'the insurance' began. Any other con-struction would result in giving an effect to the clause in question which would nullify the whole tenor of the contract between the parties. It may be true that the suicide clause as thus contrued was a useless stipulation in the policy sued on, considered alone, since the one year from the date the insurance began had long since elapsed; but it is more consonant with the agreement of the parties, as evidenced by everything else in the case, that this clause would be treated as mere surplusage even than that it should be permitted to stand apart,

and out of harmony with all the other facts showing the true intent of the parties." (Our italics.)

And while the court suggested that suicide clauses, such as the one before it, were treated favorably by the courts for the purpose of preventing the perpetration of fraud upon life insurance companies, it declared that (p. 314): "It is equally commendable that the limit should be brief, as being, on the one hand, sufficient to enable the company to satisfy itself of the honest purposes of the insured, while protecting itself against possible fraud on his part; and at the same time it is desirable that the insured should not feel that he should, during the whole life of the policy, be unprotected against the possibility of bringing death to himself by his own hand through the blameless misfortune of losing his mental faculties. The insured in the case before us had the right to guard against such contingency, as we believe he did, by confining that contingency to the first year of his insurance. When he lived through that year, and so outlived the clause in question, he had attained a *status* with the company more valuable than the one he held when he obtained his policy in 1910. We cannot think that it was his purpose to waive that advantage, or of the company by indirection to take it from him. Viewing the case as a whole, we believe that we have given the contract and writings of the parties the only construction which they can reasonably bear."

So the judgment of the lower court was affirmed.

As supporting his contention, the appellee also cites *Aetna Life Ins. Co.* v. *Dunken* (1924), 266 U. S. 389, 45 S. Ct. Rep. 29, 69 L. Ed. 343. This was an action brought in the Texas courts to recover the proceeds of a life insurance policy issued by the appellant. From a judgment in favor of the appellee, in which certain penalties were imposed under Texas statutes, the appellant sought a review by the Supreme Court of the United States of a judgment

of the Court of Civil Appeals, of the Third Supreme Judicial District of Texas, affirming the judgment of the lower court. In order to ascertain whether the issues involved questions over which the Supreme Court of the United States had jurisdiction, it became necessary for that court to determine in what state the policy of insurance sued upon was issued. The facts as set out in the opinion (p. 391) so far as pertinent here were that: "On December 17, 1910, H. B. Alexander, manager for the insurance company in the State of Tennessee, took the application of Dunken, then a resident of Tennessee, for a seven-year term policy. The policy was duly issued in Connecticut and delivered in Tennessee to Dunken. By its terms, at the sole option of the insured, upon any anniversary of its date, without medical reexamination, it was convertible, among other forms of insurance, into a twenty payment life commercial policy, bearing the same date and issue at the same age, on payment of the difference between the premiums already paid and those required under the converted policy. On February 19, 1916, the seven-year policy still being in force, Dunken, in the meantime having moved to Texas, exercised his option and applied to the company for a conversion 'in accordance with the conditions' of that policy just stated. His application stipulated that the statements and answers in the original application for the seven-year term policy should be the basis of the new policy and form a part of the same. The application was mailed to the Tennessee manager and by him forwarded to the home office of the company in Connecticut. There the old policy was cancelled, stamped 'Surrendered; new number, 152,775; $10,000,' and a new twenty payment life commercial policy, bearing the new number and conforming to the express terms of the agreement in the original policy, was issued and forwarded to Alexander in Tennessee for de-

livery. Alexander sent the policy by mail to Dunken at Waco, Texas, together with a loan note and a form authorizing the company to deduct the 1916 premiums from the proceeds of the loan to be signed by him and returned. Dunken received these documents in due course of mail and retained the policy, but did not answer Alexander's letter, pay the premiums or execute the loan papers. Three months later he died."

In arriving at a solution of the question confronting it the court cited the case of *Dannhauser* v. *Wallenstein* (1901), 169 N. Y. 199, 62 N. E. 160, where a ten payment life policy provided that, after the payment of two or more equal premiums, notwithstanding default in payment of subsequent premiums, the company, on application, would grant a paid-up policy for a proportionate part of the original amount of the policy, and it was held that such paid-up policy when issued was not an independent contract, and quoted from the opinion of the court the following statement (p. 208) : "It was simply a continuation of the original contract, under the option which gave the holder thereof the right, after two or more annual premiums had been paid, to cease paying the annual premiums and take a paid-up policy in exchange for the first one. It was a change in the mere form of the contract expressly provided for by its own terms. It is true that the first policy, the original evidence of the contract between the insured and the company, was 'surrendered to the company and canceled' when the paid-up policy was issued, but this was simply a part of, and in compliance with, the terms of the original contract. The contract was continued, as it provided that it might be, in the form of a paid-up policy, such as was accepted by the defendant. It was not a modification, but a fulfillment, of the original contract."

The court then cited and commented upon other cases

including the Gans and Silliman cases, *supra,* and closed its opinion with this language (p. 399) : "In the light of these decisions, then, we inquire whether the second policy issued to Dunken is to be controlled by Tennessee or Texas law. The contract contained in the original policy was a Tennessee contract. The law of Tennessee entered into it and became a part of it. The Texas statute was incapable of being constitutionally applied to it since the effect of such application would be to regulate business outside the State of Texas and control contracts made by citizens of other states in disregard of their laws under which penalties and attorneys' fees are not recoverable. *New York Life Ins. Co.* v. *Head,* 234 U. S. 149; *Overby* v. *Gordon,* 177 U. S. 214, 222. The second policy here was issued in pursuance of, and was dependent for its existence and its terms upon, the express provisions of the contract contained in the first one. By those provisions, upon the simple application of the insured, the new policy must issue. Nothing was left to future agreement. The terms of the new policy were fixed when the original policy was made. In effect, it is as though the first policy had provided that upon demand of the insured and payment of the stipulated increase in premiums that policy should, automatically, become a twenty payment life commercial policy. It was issued not as the result of any new negotiation or agreement but in discharge of pre-existing obligations. It merely fulfilled promises then outstanding; and did not arise from new or additional promises. The result in legal contemplation was not a novation but the consummation of an alternative specifically accorded by, and enforceable in virtue of, the original contract. If the insurance company had refused to issue the second policy upon demand, the insured could have compelled it by a suit in equity for specific performance. See *Tayloe* v. *Merchants' Fire Ins. Co.,* 9 How. 390, 405.

"From these premises it necessarily results that the second policy follows the status of the first for which it was exchanged, and is not subject to the Texas statute relating to penalties and attorneys' fees but is controlled by Tennessee law. The judgment below, therefore, insofar as it gives effect to the Texas statute by imposing a penalty of twelve per cent and allowing attorneys' fees, is erroneous, in that the Texas statute can not constitutionally be applied to a Tennessee contract."

In the case of *Krebs* v. *Philadelphia Life Ins. Co.* (1915), 249 Pa. St. 330, 95 Atl. 91, it was held that: "Where a policy of life insurance, dated October 1, 1913, but issued August 1, 1913, contained an endorsement signed by the insurance company's secretary stating that 'the amount insured by this policy will be carried as term insurance from August 1, 1913, to October 1, 1913,' and provided that the suicide of the insured 'within one year of the date hereof is a risk not assumed by the company,' and that the policy should be incontestable, 'except for non-payment of premiums after one year from its date,' the one year period relating to suicide was properly computed from the date when the term insurance began, not from the date of the policy, and the suicide of the insured on August 24, 1914, did not defeat recovery thereon."

The facts in the instant case, in all their essential characteristics, are closely analogous to those in the Silliman and Aetna Life Insurance Company cases, *supra,* and the reasoning of the courts in those two cases, from which we have quoted at length, are especially applicable to the facts here, and without further extending this opinion for the purpose of incorporating therein any additional reasons, if it were possible to present them, we hold that the phrase, "In case of self-destruction *within two years from the date on which this in-*

*surance begins"* (our italics), contained in both policies issued to the insured by appellant, referred to August 17, 1927, the date upon which the five-year term policy began.

Finding no error the judgment is affirmed.