**OCCIDENTAL LIFE INSURANCE COM-PANY OF NORTH CAROLINA,**
Appellant,

v.

**Willie E. HURLEY, Appellee.**

No. 8458.

Court of Civil Appeals of Texas,
Amarillo.

Aug. 26, 1974.

Rehearing Denied Sept. 23, 1974.

Key, Carr, Evans & Fouts, Donald M. Hunt, Lubbock, for appellant.

Nelson, McCleskey, Harriger & Brazill, Ernest R. Finney, Jr., and Don Graf, Lubbock, for appellee.

ELLIS, Chief Justice.

In this appeal from a judgment entered against a life insurance company in favor of the plaintiff-beneficiary on a policy insuring the plaintiff's daughter, the basic question is when the two year suicide clause of such policy commenced to run. The trial court determined as a matter of law that the suicide clause in question was a continuation of a prior suicide clause of a policy insuring the mother, plaintiff herein, and covering the daughter as an insured child prior to the issuance of the subsequently converted policy upon the daughter. The trial court, sitting without a jury, found that the two year suicide clause in question had run before the death of the daughter who was the insured under the latter policy, and awarded to the plaintiff, the daughter's beneficiary, the full face value of the policy plus statutory penalty, attorney fees and interest from the date of judgment. Affirmed.

A policy on the life of Willie E. Hurley, the plaintiff and natural mother of the deceased, Laura J. Hurley, was issued on October 8, 1964, by Occidental Life Insurance Company of North Carolina, in the amount of $5,000. In addition to the basic policy a rider was attached thereto for $1,000 term life insurance coverage upon the life of "Insured's" dependent children designated in the application for the agreement. The deceased, Laura J. Hurley, was so designated in the application. The original term insurance rider contained the following provision:

"CHANGE IN PLAN: On the Policy Anniversary nearest the twenty-first birthday of an Insured Child or at the end of the premium paying period under the base Policy, whichever date is the earlier, the coverage under this Agreement on the life of an Insured Child may be exchanged without further evidence of insurability for a new Policy for an amount equal to five times the Amount of Insurance in force on the life of such Insured Child. The new Policy

shall be issued as of the date of exchange and may be on any life or endowment plan then being issued by the Company, provided that premiums thereon are payable for a period of not less than ten years, and that the face amount shall not be less than the published minimum for the plan of insurance applied for. The premiums charged shall be determined in accordance with the Company's rates then in effect for the attained age of the Child Insured on the date of exchange. Any such exchange will be effected only upon receipt of a written request therefor, which request must be made within the thirty-day period preceding the date of such exchange. Such written request if made during the lifetime of the Insured shall be signed by the person who is entitled to exercise the rights and privileges under the Policy. If such written request is made after the death of the Insured, it shall be signed by the Child who is to be Insured under the Policy."

The base policy also contains a suicide clause; however, the rider makes no mention of such a clause. Such clause is as follows:

"3. Suicide—If the Insured commits suicide, while sane or insane, within two years from the Policy Date, the insurance under this Policy shall be a sum equal to the premiums paid."

The rider attached to the base policy contains the following definitions:

"INSURED: The Insured shall be the person designated in the Policy Schedule of the Policy to which this agreement is attached.

"INSURED CHILD: An Insured Child shall be any dependent child of the Insured designated in the application for this Agreement, or any Child acquired by the Insured subsequent to the issuance of this agreement who is at least fifteen days of age. For the purpose of this Agreement, 'Dependent Child' means

a legitimate Child, a Stepchild, or a legally adopted Child of the Insured."

Shortly after the twenty-first birthday of Laura Hurley, the insurance company was contacted and subsequently the policy exchange was requested, as a result of the "Change in Plan" clause of the rider, for $5,000 double indemnity permanent life insurance. A new application was requested by the insurer and thereafter completed and returned by Laura Hurley. The insurer refused the double indemnity request upon grounds of the health of Laura Hurley and issued a policy for $5,000 permanent life insurance, dated November 1, 1970. Such latter policy also contains a suicide clause identical to the clause found in the base policy on plaintiff's life and which contained the rider covering the daughter. On August 10, 1972, Laura J. Hurley died by suicide. Upon demand by plaintiff, named as beneficiary of the latter policy, insurer refused to pay the face value of the policy and offered a return of premiums. Timely written demand was made upon insurer requesting payment of the full face value indicating insurer would be subject to penalty, interest and attorney fees for refusal. Such demand was refused by insurer and the amount of premiums was paid into the registry of the Court.

Written stipulations as to all pertinent fact questions with the exception of the amount of attorney fees were entered into by both parties and adopted as findings by the court. Therefore, the only questions presented to the trial court were (1) whether the insurer was liable for the full face value of the policy or whether its liability was limited by the suicide clause to a return of premiums; (2) the applicability of the statute authorizing penalty, and attorney fees; (3) the amount of attorney fees. An award was made for the full face value of the policy, $5,000; $600 penalty; attorney fees for preparation, trial and appeal with automatic remittitur in the event an appeal was not made; and interest from time of judgment. Defendant insurer perfected this appeal from that proceeding.

It is undisputed that if the two year clause contained within the second policy, dated November 1, 1970, is applicable, the liability of the insurer is limited to the return of premiums. Insurer contends by two points of error that the trial court erred in holding that the two year period commenced to run from the policy date of the original term policy because (1) there was no suicide clause applicable to Laura Hurley in that policy, or (2) the exchange constituted a new agreement on the grounds that the policies were substantially different. These two points shall be considered together. In its third point, appellant contends that no amount of the policy, penalty, interest, or attorney fees were recoverable, since only the amount of the returned premiums paid into court was owed by the insurer.

■ The general rule is that when a policy is canceled or surrendered and replaced by a new agreement, the operation of the suicide clause is reckoned from the effective date of the old policy, if there is no substantial difference between the two contracts. However, if the new policy is so different as to constitute an entirely new agreement the original suicide clause is inapplicable. Where the latter is identical in all respects or is at least substantially similar to the old policy, it has usually been held that the policies should be considered as one agreement. Anno. Suicide Clause—Inception of Risk, 37 A.L.R.3d 933, 937, 951 (1971).

Insurer cites Nielsen v. General American Life Ins. Co., 89 F.2d 90 (10th Cir. 1937) and Gans v. Aetna Life Ins. Co., 214 N.Y. 326, 108 N.E. 443 (1915) for the proposition that a new agreement was effected by the exchange. In the Nielsen case the conditions for exchange of the first policy for the latter policy were not complied with; therefore, the new policy received by the insured was not one which

he had a right to demand under the exchange provisions. Accordingly, it was held that the latter was a new, separate and distinct agreement and the suicide clause contained therein was applicable from the date of the second policy. In the Gans case, insured exercised an option to exchange a term policy for a policy of any kind issued without medical examination and the court held that there was a new agreement. However, in *Gans* the term policy contained three options: (1) renew the term contract; (2) exchange for any policy issued by the company; (3) exchange for any policy dated the same as the term and pay the difference in premiums from such date to the date of issue. It would appear that the intent of the parties in such a case would be that a new agreement was contemplated if the second option was exercised rather than the first or third options which clearly contemplated a continuation of the original agreement. Insured in that instance elected to exercise option number two whereby a new agreement was contemplated.

In the instant case, the procedure for exchange is set out in the term rider and the rights, obligations and liabilities are fixed by the term rider. It is unquestioned that the latter policy was issued pursuant to the terms of the prior agreement and that the procedures and conditions thereof were followed. It is further evident that the parties contemplated that the conditions be followed, and that the insurer was bound to issue the latter policy. The insured attempted to deviate from the conditions by requesting double indemnity coverage and the insurer refused on the ground of unacceptable health. It would then appear that insured was, at the time of the exchange, an unacceptable risk and the insurer issued only that coverage that it was bound to issue under the fixed conditions in the prior term rider, evidencing that it was not contemplated that either party was required to enlarge its obligations or diminish its rights under the latter policy issued pursuant to the basic agreement.

From an examination of the "Change in Plan" provision in the term rider it is apparent that the insurer is obligated to issue a policy without further evidence of insurability. The type of policy issued is to be any life or endowment plan being issued at the time of the exchange. The amount of the new policy is to be five times the amount in force ($5,000), and the premium determination is also set forth. It was stipulated that the new policy was issued in accordance with the terms of the rider. Therefore, in our opinion, the rights, obligations, and liabilities of the parties were fixed by the prior contract and effectuated by the exchange.

The basic policy provides for $5,000 coverage upon the life of plaintiff Willie Hurley and, for additional consideration, the additional $1,000 term coverage on Laura Hurley plus the privilege of conversion. The additional premiums paid as consideration for the benefit of the $1,000 coverage on the life of Laura Hurley also included the privilege of exchanging for permanent life coverage, without further evidence of insurability. As set out in Massachusetts Mutual Life Ins. Co. v. Thacker, 15 A.D.2d 242, 222 N.Y.S.2d 339 (1961), "evidence of insurability" embraces more than merely good health or good physical condition; it also may involve the mental attitude, the possible suicidal tendencies, financial circumstances and probable life expectancy. The court further pointed out that when the insurer waives the requirement for evidence of insurability, the applicant policyholder is entitled to believe and reasonably so that upon complying with the conditions of the exchange he will receive full benefits. Thus, the inclusion of a two year suicide clause in the latter policy would deprive the policyholder of part of what he originally purchased, i. e., the right to obtain full benefits of permanent type insurance. From a consideration of the policy terms and circumstances, it would not appear to be consistent with a logical construction of the basic policy to assume that Laura Hurley was entitled to $1,000 cover-

age prior to the exchange and, by exercising the option, any coverage would then be suspended for a two year period by reason of a suicide exclusion when under the original agreement the insurer specifically waived further evidence of insurability with respect to the "Change in Plan."

The permanent type coverage was issued pursuant to the fixed conditions of the prior policy and upon the evidence of insurability furnished at the time of issuance of such prior policy. Therefore, even though the benefits under the latter policy are different in various respects from the benefits under the term policy, the rights to those additional benefits were fixed and consideration in the form of premiums was received by insurer pursuant to the provisions of the original agreement. Consequently, the latter policy is but a continuation of the prior. Since the prior policy did not contain a double indemnity clause and the insurer did not enlarge its obligations or extend its liability by granting such coverage, neither should it be permitted to diminish its liability or the rights of the insured by the addition of a suicide clause effecting a suspension of coverage, in the event of death by suicide, for a period of two years after the date of exchange. Baugh v. Metropolitan Life Ins. Co., 173 Tenn. 352, 117 S.W.2d 742 (1938); Silliman v. International Life Ins. Co., 131 Tenn. 303, 174 S.W. 1131 (1915); Western & Southern Life Ins. Co. v. Shelby, 101 Ind.App. 1, 194 N.E. 197 (1935); American Nat. Ins. Co. v. Thompson, 186 S.W. 254 (Tex.Civ.App.—Galveston 1916, writ ref'd); Aetna Life Ins. Co. v. Dunken, 266 U.S. 389, 45 S.Ct. 129, 69 L.Ed. 342 (1924).

In the case of Massachusetts Mutual Life Ins. Co. v. Thacker, supra, the Supreme Court, Appellate Division of New York, held that the New York Insurance Commissioner was warranted in withdrawing his previous approval of a plan for issuance of insurance policies analogous in effect and application to the construction accorded the policy here involved by the defendant insurance company. In such case the court stated that the fact that additional benefits may accrue upon the election by the insured to pay the required premium and exercise the option to receive a converted policy will not make the issued policy a new policy so as to permit an alteration of the liability of the insurance company by its inclusion of a separate two year suicide clause in the converted policy.

In the instant case, it is apparent that the second policy would not have been issued but for the issuance of the first, for the issuance of the second relates back in all essential respects to the first. If the first had no suicide clause applicable to Laura Hurley, then, in the absence of a specific agreement to that effect when the first was issued, in the light of the above cited authorities, it appears that the insurance company is not entitled to diminish its liability on the second by the inclusion of a two year suicide clause. See Moore v. John Hancock Mutual Life Insurance Co., 436 F.2d 823 (5th Cir. 1971). On the other hand, if the two year suicide clause of the first policy was applicable to Laura Hurley, then the two years had passed at the time of her death. Since it appears that the second policy covering Laura Hurley relates back to and is not independent of the first, then, in view of the very nature and obvious purpose of a suicide clause, the insurance company is not entitled to avoid liability under a two year suicide clause which was included in the converted policy issued approximately six years later pursuant to the original agreement.

■ In view of the foregoing, we hold that the suicide provision in question was conditioned upon and related back to the agreement evidenced by the original policy and that the latter suicide provision should not be construed independently of, but as a continuation of the obligations and conditions of the original policy and agreement. Accordingly, we overrule appellant's contentions set out in its first two points. Since the effect of such holding is that the plaintiff is not barred from recovery be-

cause of the suicide of the insured, we overrule appellant's third point. It is, therefore, our opinion that the plaintiff-beneficiary is entitled to recover the face amount of the policy, statutory penalty, attorney fees, interest and costs. Accordingly, the judgment of the trial court is affirmed.