Kenneth M. Waterman, Baker & Daniels & Shoaff, John H. Heiney, Rothberg, Gallmeyer, Fruechtenight & Logan, Fort Wayne, for defendants-appellants.

Alan D. Burke, Rochester, for plaintiff-appellee.

**FIRST LIFE ASSURANCE COMPANY and First Equity Security Life Insurance Company, Defendants–Appellants,**

v.

**COUNTING HOUSE BANK, Plaintiff–Appellee.**

No. 25A03–8708–CV–212.

Court of Appeals of Indiana, Third District.

May 23, 1988.

Rehearing Denied July 25, 1988.

HOFFMAN, Judge.

Defendants-appellants First Life Assurance Company and First Equity Security Life Insurance Company appeal a $20,939.63 judgment awarded to plaintiff-appellee Counting House Bank.

The evidence relevant to this appeal discloses that the Bank's debtor, J. Robert Kelly, obtained credit life insurance through the Bank to secure a series of loans made by the Bank beginning March 7, 1981 through the time of Kelly's death by suicide on December 19, 1983. Each loan was for a period of six months based upon an assignment of a six-month renewable certificate of deposit by Betty Kelly, J. Robert Kelly's wife. As Kelly renewed the loan each six-month period, he paid a premium for and the Bank issued a certificate

of insurance on Kelly's life for the amount of the loan with the Bank as the beneficiary.

Because the Bank acted as an agent for First Equity as well as other insurers, the Bank did not consistently place the insurance with the same company. At the April 9, 1982 renewal, the Bank placed Kelly's insurance with First Equity for the first time. Previous policies had been issued through other insurers. Insurance for renewal of the loan was placed by the Bank with First Equity on October 12, 1982; April 12, 1983; and October 11, 1983.

At the October 11, 1983 renewal First Equity determined that the amount of coverage exceeded its limits for a person of Kelly's age. Therefore, First Equity transmitted the obligation to an insurance broker, Creditors Insurance Services, which placed the insurance with First Life. On November 23, 1983 First Equity notified the Bank that the coverage had been transferred but that First Equity would assist in processing claims on the policy. The Kellys were never notified of any transactions subsequent to the Bank issuing certificates of insurance.

On December 19, 1983 J. Robert Kelly died of an intentionally self-inflicted gunshot wound. The Bank as beneficiary of the credit life insurance made a claim for the proceeds of the life insurance. Both First Equity and First Life denied the claim. First Equity denied liability on the basis of a two-year suicide exclusion in its policy and because First Equity had transferred the coverage to First Life. First Life denied the claim based upon the one-year suicide exclusion provision in its policy.

The Bank brought this action against First Equity and First Life for indemnification stemming from an action against the Bank instituted by Mrs. Kelly. Mrs. Kelly recovered a judgment from the Bank and she is not a party to this portion of the proceedings. The trial court found for the Bank on a theory whereby the date that First Equity originally issued credit life insurance to Kelly was designated as the start of the suicide exclusionary period of one year found in First Life's policy.

First Equity and First Life appeal raising several issues for review. One issue is dispositive of the appeal: whether the trial court properly applied a theory which allows the first in a series of insurance policies to be deemed the original contract with the suicide exclusionary period commencing at that time rather than at each renewal date where such theory requires the tying together of policies issued by more than one insurer.

The parties did not present and a search by this Court did not reveal any authority on this precise issue when policies by more than one insurer are meshed. However, when the policies are issued by the same insurer, a majority of jurisdictions including Indiana have determined that the suicide exclusionary period commences at the date of the original policy if policy renewals or new policies are substantially similar to the original.

> See e.g., Commonwealth Life Ins. Co. v. Jackson (1982), Ind.App., 432 N.E.2d 1382;
>
> Western & Southern Life Ins. Co. v. Shelby (1935), 101 Ind.App. 1, 194 N.E. 197;
>
> Swanson v. First Fidelity Life Ins. Co. (1983), 214 Neb. 654, 335 N.W.2d 538;
>
> Founders Life Assur. Co. v. Poe (1978), 242 Ga. 748, 251 S.E.2d 247;
>
> Occidental Life Ins. Co. v. Hurley (1974), Ct.Civ.App.Tx., 513 S.W.2d 897;
>
> Ownbey v. General United Life Ins. Co. (1974), 34 Colo.App. 33, 524 P.2d 636.

In a credit life insurance situation where a series of policies have been issued at six-month intervals, it would be manifestly unreasonable for a single insurer to apply a one or two-year suicide exclusionary clause to each renewal if the general policy provisions are substantially similar. See Founders Life Assur. Co. v. Poe, supra. If allowed to do so the insurer would be completely insulated from liability due to suicide. However, the reasoning cannot apply when the policies are issued through

different insurers and in fact intentionally placed by the Bank beneficiary with different insurers.

Close examination of the relevant time period and policy provisions is required. From the inception of Kelly's loan in March 1981 until April 9, 1982 the Bank placed the credit life insurance with various companies other than First Equity and First Life. On April 9, 1982 the Bank placed the insurance with First Equity for the first time. The policy through First Equity contained a two-year suicide exclusionary period. The Bank consistently placed the insurance with First Equity through October 11, 1983. On that date First Equity unilaterally decided to transfer the risk to a broker. The broker placed the insurance with First Life. The Bank, but not Kelly, received notice of the change in insurers and did not object. First Life's policy provisions contained a one-year suicide exclusionary clause. Kelly took his life on December 19, 1983, approximately 20 months after First Equity had originally insured Kelly and approximately two months after First Life initially issued insurance to Kelly.

The trial court reasoned that the obligation would partially rest with First Equity because it had unilaterally transferred the coverage to First Life. The court found the commencement date of the suicide exclusionary provision to be April 9, 1982 the date of the first policy issued by First Equity. Instead of First Equity's two-year exclusionary period, the court applied the one-year exclusionary period within First Life's policy. Only through this fusion of the policy periods and inception dates could the suicide exclusionary terms be avoided.

By the majority interpretation noted above, the policy date of the first contract issued by First Equity would control when measuring the suicide exclusionary period if First Equity had issued all subsequent policies. Even if the date of First Equity's original policy was deemed the appropriate commencement date of the suicide exclusionary period, it would not follow that the one-year exclusion within First Life's policy would apply. Because of the circumstances in the present case, where the beneficiary controlled placement of the insurance, no precedent and no logical reason exist for tacking together policy terms and dates when the policies are issued by different companies.

It should be noted that the Bank was not harmed by First Equity's decision to transfer the risk to First Life. While the Bank was not harmed under the facts of this case, it also was unable to benefit from the shorter suicide exclusionary period within First Life's policy.

Consequently, the trial court's decision must be reversed and judgment must be entered in favor of First Equity and First Life.

Reversed.

GARRARD, P.J., and SULLIVAN, J., concur.