CAROLINE CATHERINE SCHULTZ, APPELLEE, v. JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, APPELLANT.

280 N. W. 165

FILED JUNE 10, 1938. No. 30308.

*Harley G. Moorhead* and *Emmet S. Brumbaugh,* for appellant.

*Fried & Mars, contra.*

Heard before GOSS, C. J., ROSE, EBERLY, DAY, PAINE, CARTER and MESSMORE, JJ.

GOSS, C. J.

This is an action by plaintiff, the widow of Otto W. Schultz, and the beneficiary named in a group policy certificate of insurance issued by defendant to the insured as an employee of Armour & Company. The insured died October 27, 1935, and plaintiff sued for $2,000, alleged to be due under a "total, continuous and permanent disability" provision of the policy. From a verdict and judgment for plaintiff for $2,139.33 entered therein and an allowance to plaintiff of $400 attorney fees, defendant appeals.

The chief defense is that the policy had not been in force after May 30, 1935, and that insured was never prior to that date permanently and totally disabled. Defendant alleges that the insured was discharged on May 30, 1935, for drunkenness and that ended the liability on the policy, and that thereafter the insured was gainfully employed by Arnold Brothers of Chicago from July 22, 1935, to October 7, 1935.

The permanent total disability provision of the policy provided that before the insured became 60 years of age he must become wholly disabled by bodily injuries or disease and be permanently, continuously and wholly prevented thereby for life from engaging in any occupation or employment for wage or profit. The insured was about 48 years of age when he died.

Though less than 48 years of age at the time of his death, the insured had worked for Armour & Company 35 years, the last 10 years as a salesman out of the wholesale market. He was absent without leave and Mr. Waterbury, the general manager, testified that he discharged him because he had been warned many times before that he would be discharged for such cause. The insured had been in the habit of laying off without notice when he was on a drunken spree. This occurred several times the last year of his service.

When he was finally discharged he went to Chicago. Mr. Waterbury recommended him to Armour & Company of Chicago because he had been a very good salesman and believed if he got away from the environment he might possibly straighten up. He, however, was employed by Arnold Brothers of Chicago as a meat salesman and worked there from July 22, 1935, to October 7, 1935.

There is evidence that his height was six feet and two inches and his normal weight about 250 pounds. Plaintiff testified that his weight at the time of his death was 100 pounds and the attending physician testified that his weight at that time appeared to be 130 to 140 pounds. This physician, Dr. Oswin F. Koch, of Chicago, testified that the patient died of acute leukemia. Leukemia is a latent, progressive and incurable disease due to a derangement of the blood-making organs of the body. Toward the end the patient suffered from acute muscular myocarditis, which probably was the immediate cause of death, although the leukemia probably produced the said heart trouble.

The wife and daughter of the insured and neighbors,

friends and relatives testified to their relation to the insured and as to his habits, appearance and symptoms. We do not think it is necessary to go into this evidence in detail. It formed, in part, the basis of the hypothetical question put to the experts.

Dr. B. C. Russum, of Omaha, in charge of the department of pathology and medicine in Creighton University, qualified as an expert and gave an opinion based upon a hypothetical question fairly stating the evidence produced on behalf of plaintiff as to the condition of the insured prior to his removal to Chicago as well as thereafter. He testified that, assuming the facts stated to be true, the insured was suffering from leukemia on and before May 30, 1935. Dr. A. C. Fellman and Dr. Frederick J. Wearne, both of Omaha, expressed the same opinion in answer to a similar hypothetical question.

Plaintiff testified that, when the insured was working in Chicago for the few weeks before his last illness in the summer of 1935, and during the last few months in Omaha, he came home during the day occasionally and rested for a time and then continued his work. This was not in accordance with his habit formerly when he was in good health. From January, 1935, he had become very nervous. He was irritable and slept poorly. His nose bled frequently, lasting an hour or so at a time. He had lost much weight except as to his abdomen, which became enlarged. His face had become thin and had a yellow color. He had a foul breath, was very constipated, the stools were black and had a bad odor. After he was discharged in Omaha and went to Chicago he quit drinking intoxicating liquors and did not drink any more until the last week of his life.

"A contract of insurance should be given a reasonable construction so as to effectuate the purpose for which it was made. In cases of doubt, it is to be liberally construed in favor of the insured." *Hamblin v. Equitable Life Assurance Society,* 124 Neb. 841, 248 N. W. 397; *Oswald v. Equitable Life Assurance Society,* 128 Neb. 173, 258

N. W. 41; *Woods v. Central States Life Ins. Co.*, 132 Neb. 261, 271 N. W. 850.

"A literal interpretation of the term 'total disability,' in an accident insurance policy implying by its terms utter mental and physical helplessness as a condition of liability, will not be adopted, where it would result in an unreasonable and unjust forfeiture of the accident insurance." *McCleneghan v. London Guarantee & Accident Co.*, 132 Neb. 131, 271 N. W. 276; *Serven v. Metropolitan Life Ins. Co.*, 132 Neb. 637, 272 N. W. 922.

In the *McCleneghan* case above, the insured was a physician and surgeon, who was injured in an automobile collision October 20, 1933. He thought the injuries were minor and continued to work, believing his injuries were due to indigestion. In April, 1934, an X-ray examination disclosed a diaphragmatic hernia, for which he was operated. He was totally disabled and recovered for disability from April 1, 1934, to August 1, 1934. There, as here, the jury found that the disease was latent and that the insured was not precluded from recovering because he had attempted to carry on for a time as if he were not totally disabled.

Where different minds may draw different conclusions as to whether the facts establish liability for permanent and total disability, it is the duty of the trial court to submit the question to a jury.

We are of opinion the trial court did not err in submitting the issues of fact to the jury.

Besides errors assigned because the trial court did not take the case from the jury as requested at the close of plaintiff's evidence and again at the close of all the evidence, defendant has assigned many other errors relating to evidence and to instructions. We have examined them and content ourselves with saying that they do not show prejudicial error.

Plaintiff is allowed $200 for attorney fees in this court.

The judgment of the district court is

AFFIRMED.