EDWIN PAUL GARRELTS, APPELLANT, v. DEPARTMENT OF MOTOR VEHICLES ET AL., APPELLEES.

125 N. W. 2d 678

Filed January 3, 1964. No. 35535.

Dryden & Jensen, for appellant.

Tye, Worlock, Knapp & Tye, for appellee Capital Mut. Ins. Co.

Heard before WHITE, C. J., CARTER, MESSMORE, SPENCER, BOSLAUGH, and BROWER, JJ., and ZEILINGER, District Judge.

MESSMORE, J.

Edwin Paul Garrelts, plaintiff, brought this action for a declaratory judgment against the Capital Mutual Insurance Company, defendant. The purpose of the action was to determine the liability of the defendant on an insurance policy carried by the plaintiff with the defendant company. The Department of Motor Vehicles,

Ted Cash, and Manuel Rivera were made parties. Ted Cash was removed from the case by order of the court. The Department of Motor Vehicles and Manuel Rivera, insofar as this appeal is concerned, have no interest therein.

The trial court rendered judgment in favor of the defendant and against the plaintiff. The plaintiff filed a motion for new trial which was overruled. The plaintiff perfected appeal to this court.

The plaintiff's amended petition alleged, in substance, that he was the owner and operator of a 1950 Buick automobile, the title of which was in the name of his ex-wife, Mildred Garrelts; and that on July 5, 1962, he was driving the Buick in Kearney, Nebraska, and was involved in an accident with another automobile operated by Teddy Cash. The plaintiff further alleged that he had reason to believe that he had insurance with the defendant under policy of insurance No. A 256630; that after the delivery of the policy covering a 1950 Chevrolet automobile, the same was junked and he purchased a Dodge automobile; that he advised the agent of the defendant, Rex Gray, that the insurance from the Chevrolet should be transferred to the Dodge automobile and was advised by Rex Gray that the insurance had been transferred to the Dodge automobile; that he drove the Dodge until June 18, 1962, at which time he disposed of it; that from June 18, 1962, to June 21, 1962, the plaintiff or his wife did not own any automobile covered by a policy of insurance; that on June 21, 1962, he purchased a Buick automobile which he placed in the name of his wife; and that this automobile replaced the Dodge, and under the provisions of section 4, subsection 4, of the insurance policy, the replacement automobile was covered by the policy of insurance, but that through mistake a change of automobile endorsement was placed on the policy covering a Ford automobile. The plaintiff further alleged that repeated demands had been made upon the defendant through Rex Gray and its attorney

to assume liability and responsibility for the accident, but defendant had refused to do so, failing to file proof of financial responsibility in accordance with the request of the plaintiff, resulting in notice of cancellation of plaintiff's registration certificate and operator's license.

The defendant's answer admitted that the title and ownership of the Buick being driven at the time of the accident was titled and belonged to the plaintiff's ex-wife; denied specifically that the plaintiff carried public liability or property damage insurance with the defendant on the Buick that he was driving at the time of the wreck referred to in his amended petition; denied each and every allegation contained in the plaintiff's amended petition except such as were admitted to be true; and prayed that the plaintiff's amended petition be dismissed.

Inasmuch as several different automobiles are involved in this case, we will refer to the same by their trade names; to Rex Gray as Gray; to the Capital Mutual Insurance Company as defendant; and to Edwin Paul Garrelts as plaintiff.

The record discloses that the plaintiff purchased a policy of insurance, No. 3912-15, from the defendant, showing coverage from April 18, 1960, to April 18, 1961, on a 1950 Chevrolet 4-door sedan. This was the first insurance policy received from the defendant. A Chevrolet 4-door sedan registration slip shows an automobile to be covered by this policy. The plaintiff never received any other registration slip in any year for the Chevrolet, and he never got more than one license plate for that automobile. After the expiration of the above policy, the plaintiff secured another policy of insurance from the defendant, the coverage commencing April 18, 1961, which he was unable to find.

The plaintiff testified that he got his first insurance policy from Gray who was taking care of his insurance business; that he always paid Gray the premiums for the policies and the money was mailed to the defendant

by Gray; and that he had three policies of insurance with the defendant over a period of time. On February 4, 1963, the defendant, by its secretary, informed the plaintiff that he had completed 3 years of coverage under the provisions of the Nebraska automobile assigned risk plan, that he was eligible to secure insurance elsewhere with whatever company might wish to accept his application, and that defendant was not issuing a renewal of the current policy. The last policy of insurance the plaintiff had with the defendant was policy No. A 256630, from April 18, 1962, to April 18, 1963, covering a 1950 Chevrolet 4-door sedan, under the automobile assigned risk plan. There was a change of car endorsement dated August 14, 1962, which the plaintiff received sometime after August 27, 1962, this endorsement being made to cover a 1954 Ford 4-door sedan and ceasing to cover the 1950 Chevrolet 4-door sedan.

The Chevrolet was demolished sometime in 1961. It was pulled over to the side of the garage and let sit, then in December 1961, it was junked and hauled into a draw behind the house where it remained. Just the body of the Chevrolet remained after it was junked, there were no wheels on it and no motor in it. The various parts taken off of it were sold as junk.

The plaintiff further testified that he had a conversation with Gray in his office sometime in 1961. At that time the plaintiff had the second insurance policy that he had received from Gray. The substance of the conversation related to transferring the insurance to another automobile. Gray told the plaintiff it had to be sent to the defendant.

The assigned risk automobile liability policy endorsement effective April 18, 1962, a part of the policy No. A 256630, provided in part: "Newly Acquired Automobile—an automobile, ownership of which is acquired by the named insured or his spouse if a resident of the same household, if it replaces an automobile owned by either and covered by this policy and the named insured or

such spouse notifies the company within thirty days following the date of its delivery. The insurance with respect to the newly acquired automobile does not apply to any loss against which the named insured or such spouse has other valid and collectible insurance. The named insured shall pay any additional premium required because of the application of the insurance to such newly acquired automobile."

There were no further conversations with Gray about transferring the policy of insurance from one automobile to another.

The plaintiff bought a 1953 Dodge in May 1961. After he bought the Dodge he saw Gray, probably in June 1961, at his office, and his wife was present. He talked about buying a second car for his wife, and Gray told him that he would have to issue another policy. The plaintiff went across the street to get his registration off his car and bring it back to Gray's office. Gray copied it and told the plaintiff that he had to have another policy for his wife to have a car. The plaintiff stated that he was going away to work and wanted the Dodge with him. He believed that Gray had at one time sent him endorsement papers stating that the Dodge was transferred, and he thought that it was, but he could not produce the paper showing this fact. The plaintiff put the Dodge in his name. In June 1961, the Dodge was repossessed after it had caught on fire about June 18, 1961. During this entire period the plaintiff's Chevrolet was in the yard by his shop where it had been junked. The plaintiff then purchased a 1950 Buick, on June 21, 1962. The plaintiff never talked to Gray after he disposed of the Dodge, until he purchased the 1950 Buick on June 21, 1962. On July 6, 1962, the plaintiff went to see Gray to make out a report of an accident he had with the Buick on July 5, 1962. The plaintiff made out a notice or report of the accident and gave it to Gray.

On August 7, 1962, the plaintiff received a letter from

the defendant in which the defendant told the plaintiff: "We have now completed our investigation in connection with the coverage on a 1950 Chevrolet which you had insured under policy A256630 effective April 18, 1962. Prior to this policy, we carried another policy for you, also on the 1950 Chevrolet 4-dor Sedan.

"Our investigation reveals that you operated this automobile up until about seven or eight months ago. You purchased a 1953 Dodge 4-dor the first of August, 1961, which you drove from then until December of 1961 or January of 1962. As of the date your policy went into effect, April 18, 1962, you still had possession of the 1950 Chevrolet which was insured under a Capital Mutual Automobile policy.

"On or about June 18, 1962, you sold the Dodge and on the 21st of June, 1962, you purchased a 1950 Buick 4-dor Sedan so on the 21st of June you had in your possession a 1950 Buick and a 1950 Chevrolet.

"On the date of the accident, July 5, 1962, you were not driving a 1950 Chevrolet which we had insured under the above captioned policy. You were driving a 1950 Buick, owned by you, but not insured by this company. Since you failed to notify the company within thirty days following delivery date of this automobile and did not replace the automobile covered by this policy, there is no insurance afforded you under the above captioned policy which would provide protection for any claims presented as a result of the accident which occurred on July 5, 1962."

The Buick purchased in June 1962, was titled in the name of plaintiff's wife, although it was originally in his name. The plaintiff did not notify the company or anyone about the purchase of the Buick until after the accident.

On August 9, 1962, the plaintiff received another letter from the defendant, in which the defendant advised that it understood that the plaintiff did not have the 1950 Chevrolet insured under his assigned risk policy,

and suggested that he terminate his coverage, or if he had another automobile, advise as to the motor and serial number and defendant would transfer the coverage.

The plaintiff further testified that he had received a letter in 1960, telling him to go to Gray about his policy. This was in the latter part of May of that year. He further testified that he purchased a 1954 Ford on the policy upon which this suit was brought, about July 15, 1962, after he had had the accident. He went to Gray and secured the endorsement representing the change of automobiles as heretofore mentioned. When he talked to Gray about the accident and gave him a statement, Gray told the plaintiff that he had ample time, that the policy had not lapsed from the other automobile, and he could still transfer it regarding the accident.

On cross-examination the plaintiff testified that at the time of the accident he had been separated from his wife but was still living with her; that the divorce was granted on July 25, 1962, and he was living with his wife just prior to the divorce; that he stayed with his family before the divorce; that on September 5, 1962, he filed a motion to set aside the divorce; that he was living with his wife before the divorce decree was taken; that at the time of the accident he was living in a cabin which he rented, but was not living there continuously; and that his wife and children were living in his house. The plaintiff further testified on cross-examination that the reason he obtained insurance from the defendant was that the State Farm Insurance Company had canceled his insurance which he had procured from Gray before he got the policy of insurance involved in this case; that he demolished the Chevrolet around Christmas in 1961, and quit driving it in the middle of 1961, in June or July; and that he talked to Gray about changing his insurance from the Chevrolet to the Dodge about 2 weeks after he bought the Dodge.

On redirect examination the plaintiff testified that he talked to Gray about the Chevrolet in May of 1961;

that Gray told him he would send in a request for a transfer; that he received a transfer, but could not find it; that this transfer was to the 1953 Dodge; and that at the time of the accident with the Buick, the Chevrolet was not in condition that it could be used.

Rex Gray testified that the plaintiff at no time made any request that the insurance on the 1950 Chevrolet be transferred to the 1953 Dodge; that no notice was ever given to the defendant requesting such a transfer; that on July 6, 1962, the day after the accident, Gray forwarded a letter to the defendant stating that the plaintiff had traded the 1950 Chevrolet for the 1950 Buick on June 21, 1962; that this information was given to Gray by the plaintiff on July 6, 1962; that there would be an additional premium on the 1953 Dodge over the 1950 Chevrolet; and that prior to the accident on July 5, 1962, the plaintiff talked to Gray in April 1962, about insurance on his wife's car, but did not want to pay the extra premium.

The plaintiff was recalled and testified that he told Gray about July 6, 1962, that the Dodge had burned up, that the Chevrolet had been junked, that the Buick had been put in his wife's name, and Gray said it would not make any difference as long as they had just one automobile; and that he had become reconciled with his wife and the decree of divorce was set aside within the 6-month period.

The plaintiff's assignments of error may be summarized as follows: The judgment of the trial court is not sustained by the evidence and is contrary to law.

The plaintiff contends that under the evidence adduced, and under the provisions of the policy of insurance issued to the plaintiff by the defendant, the defendant insured the Buick under the terms of the policy when the accident occurred within 30 days after the acquisition of the Buick.

In this connection, the plaintiff cites several cases from foreign jurisdictions. The closest in point is the case

of Kaczmarck v. LaPerriere, 337 Mich. 500, 60 N. W. 2d 327. This was a garnishment proceeding brought to determine defendant insurance company's liability, as carrier of the public liability risk on principal defendant's automobile, to plaintiff on a judgment secured by him against principal defendant for damages arising out of the latter's negligent operation of that automobile. The policy had a provision relating to newly acquired automobiles similar to that in the instant case. The court held that where an insured who traded insured car for a second car without notifying insurer of such trade and then traded second car for a third car and notified insurer within time prescribed by policy after last trade made automatic insurance clause effective on the third car; and that assignment of automobile insurance policy at time insured traded insured car to assignee and received a second car which was later traded for a third car, of which last acquisition insurer was given notice pursuant to policy, did not relieve insurer from liability to plaintiff who was injured in an accident with the third car before insurer consented to assignment, hence, insurer was subject to garnishment by the injured party. This is the only case found in our research that apparently supports the plaintiff's position in the instant case.

The following are applicable to this case.

This court, in Preferred Risk Mutual Ins. Co. v. Continental Ins. Co., 172 Neb. 179, 109 N. W. 2d 126, said: "A policy of insurance will be given effect according to the ordinary sense of the terms used, and if they are clear they will be applied according to their plain and ordinary meaning."

In Koehn v. Union Fire Ins. Co., 152 Neb. 254, 40 N. W. 2d 874, this court held: "A policy of insurance should be considered as any other contract to give effect to the intention of the parties at the time it was made as expressed therein. The language of it should be considered not in accordance with what insurer intended the words

to mean, but what a reasonable person in the position of the insured would have understood them to mean. * * * In giving effect to this rule, it is equally important that the contract made by the parties shall be enforced, and that a new contract will not be interpolated by construction." See, also, 44 C. J. S., Insurance, § 289, p. 1136, § 297, p. 1166; 29 Am. Jur., Insurance, § 245, p. 627, § 246, p. 628, § 247, p. 638; Peony Park, Inc. v. Security Ins. Co., 137 Neb. 504, 289 N. W. 848.

"The parties to an insurance contract may make the contract in any legal form they desire and, in the absence of statutory provisions to the contrary, insurance companies have the same right as individuals to limit their liability and to impose whatever conditions they please upon their obligations, not inconsistent with public policy. If plainly expressed, insurers are entitled to have such exceptions and limitations construed and enforced as expressed." Lonsdale v. Union Ins. Co., 167 Neb. 56, 91 N. W. 2d 245. See, also, 29 Am. Jur., Insurance, § 264, p. 650.

In the instant case the evidence is in clear conflict. This is true as to whether or not the plaintiff and his wife resided in the same household at the time the Buick was acquired. The policy in question required membership in the same household in order for the Buick to constitute a newly acquired automobile, since the title to the Buick was placed in the name of the plaintiff's wife. However, even if the plaintiff and his wife were living together at the time of the acquisition of the Buick, the plaintiff is not entitled to protection under the policy of insurance. The evidence shows that the 1950 Buick did not replace the 1950 Chevrolet under the terms of the insurance policy. The 1950 Buick replaced a 1953 Dodge. The plaintiff's testimony shows that the Chevrolet may have been in condition to operate at the time the Dodge was purchased. The Chevrolet was not junked until the latter part of December 1961. The plaintiff's position seems to be that he

operated the Chevrolet until it broke down and the Dodge until it became useless, then operated the Buick. It appears by the evidence that the Buick could not replace the Chevrolet; that under the plaintiff's evidence the Chevrolet was junked over a year before the purchase of the Buick; and that the Dodge was purchased to replace the Chevrolet. It is obvious that the policy of insurance was violated and that no liabilty could attach to the defendant under such conditions.

Gray was not the agent of the defendant. He merely acquired an assigned risk policy with the defendant for the plaintiff, and the evidence of the plaintiff and Gray is in direct conflict. Gray insists that no request was ever made by the plaintiff to transfer the insurance from the Chevrolet to the Dodge. To say the least, the plaintiff's testimony is confusing and inconsistent, and it is difficult to ascertain just what position the plaintiff wishes to take with reference to any conversation with Gray.

There is another rule that applies to this case. Actions in equity are triable de novo on appeal to the Supreme Court, subject to the rule that when evidence on material questions of fact is in irreconcilable conflict, the Supreme Court will, in determining the weight of the evidence, consider the fact that the trial court observed the witnesses and their manner of testifying, and must have adopted one version of the facts rather than the opposite. See, Dartmouth College v. Rose, 172 Neb. 764, 112 N. W. 2d 256; Schepers v. Lautenschlager, 173 Neb. 107, 112 N. W. 2d 767.

In the light of the evidence and the authorities from this jurisdiction heretofore cited, we conclude that the judgment of the trial court should be, and is hereby, affirmed.

AFFIRMED.