Joseph **BEISTER** and Irene Beister,
Appellants,

v.

**JOHN HANCOCK MUTUAL LIFE IN-
SURANCE COMPANY,** Appellee.

No. 18023.

United States Court of Appeals
Eighth Circuit.

Feb. 24, 1966.

Before VOGEL, Chief Judge, and BLACKMUN and GIBSON, Circuit Judges.

GIBSON, Circuit Judge.

Appellants, Joseph Beister and Irene Beister, are the parents of Eugene Beister and the beneficiaries of an insurance policy issued by the defendant John Hancock Mutual Life Insurance Company (referred to hereafter as defendant or company) on the life of Eugene Beister. Complaint to collect the proceeds of the insurance policy was filed in the District Court of Nebraska in the amended amount of $10,000 and reasonable attorney's fees. Diversity of citizenship with the requisite amount establishes jurisdiction. The case was originally tried before a jury but at the conclusion of the evidence, the parties waived a jury and submitted the issues to the Court. The Court found in favor of the defendant on the ground: (1) that under the interpretation of the conditional receipt and the application for insurance there was no contractual liability on the part of the defendant; and (2) that, although the insurance company was negligent in unreasonably failing to notify the applicant (Eugene Beister) that the policy was ready for delivery, the defendant's negligence was not the proximate cause of any loss, because the plaintiffs failed to show that the applicant Eugene Beister was financially able to pay or would have paid the balance of premium due upon notification to him of the availability of the policy.[1]

Most of the essential facts are not in dispute but there remains some ambiguity in the time sequence of the essen-

John J. Powers, of White, Lipp, Simon & Powers, Omaha, Neb., made argument for appellants and filed brief.

Emmet S. Brumbaugh, of Gray & Brumbaugh, Omaha, Neb., made argument for appellee and filed brief.

1. The trial court held that an interpretation of the "Conditional Receipt for Advance Payment With Application For New Insurance," and "Application for Insurance to the John Hancock Mutual Life Insurance Company, Boston, Massachusetts" both dated September 14, 1960 afforded no insurance coverage upon the life of Eugene Beister on December 14, 1960, the date of his death, for the reason that the predating of the policy to June 13, 1960, caused the insurance to expire prior to the date of the application and that the sixty-day period in which applicant might pay the premium was to commence running from June 13, 1960, the predating commencement date of the policy coverage and that even though there was no possibility of obtaining insurance protection from the predating date of June 13, 1960 to September 14, 1960, the payment made with the

tial events concerned after the approval of the application, and the issuance of the policy, as regards the failure to advise applicant and the failure to tender the policy to applicant before the applicant's death.

Eugene Beister on September 14, 1960 made application for an insurance policy in the amount of $10,000 with the defendant and paid as a deposit on the premium the amount of $28.40. The application was taken by Harry R. Meister, an agent of the defendant, and a friend of applicant and his family. Eugene Beister lived both at Hastings, Nebraska, which was the base of his employment operations, and then at his parent's home at Omaha, Nebraska, where he usually spent every other weekend. After taking the first application for the insurance and noting the premium payment of $28.40, which represented one month's premium at age 26, the agent recommended to Beister that he predate the policy, presumably in order to obtain the premium rate at age 25 instead of 26. Beister accepted the recommendation of the agent and thereupon the agent prepared a new application form, discarding the old form, and then received the check from Beister in the amount of $28.40 without noting on the application form or the conditional receipt whether this was to be a part payment, a semi-annual, or a monthly payment. The agent informed Beister that when the policy arrived he would contact him.

The issuance of insurance was conditioned upon the approval of the risk by the home office of defendant. The home office required a complete physical examination, to which Beister submitted, and then later required a urinalysis, which requirement Beister also met. The application was approved on October 31, 1960 by the home office and Policy No. 7363667 was issued by the defendant and sent to its Omaha office for delivery and collection of the balance of a semi-annual premium due thereon in the amount of $134.10. The record does not disclose the exact date on which this policy reached the Omaha office but presumably it was about the 3rd of November, it having been mailed on November 1, 1960. Under the company's practice any policy issued would be placed in the agent's box at the Omaha office and the agent was then supposed to contact the person who had contracted for the insurance. If the agent did not pick up the policy, usually within a week, the policy ordinarily would be mailed to the agent for delivery to the applicant. In this case the record is not clear whether the agent picked up the policy from the Omaha office or received the same through the mail. The agent's only recollection was that the policy came into his hands in the latter part of November or the first part of December.[2]

The agent knew that the applicant's work entailed out-of-town travel over the east end of the state of Nebraska and that the applicant was stationed at Hastings

---

policy only resulted in securing a premium rate calculated at age 25 instead of age 26 (also the incontestable features of the policy would become effective at an earlier date by this predating practice). The trial court pointed out that the printed form of conditional receipt did not in all respects coincide with the factual situation here and that any doubt in interpreting a printed insurance form of this kind should be resolved favorably toward the applicant but held that by the strict terms of the document in question no insurance was in effect at the date of applicant's death. On the issue of negligence the trial court held defendant negligent but denied recovery on the ground that plaintiffs did not

prove this negligence to be the proximate cause of their loss.

2. The agent testified:
"Q. Did the insurance policy finally arrive in Omaha?
"A. Yes, it did.
"Q. Do you recall when it was that it arrived?
"A. No, I don't remember.
"Q. What is your best judgment as to when it did relative to Gene's death? The date of Gene's death?
"A. The only recollection that I have as to the time that the policy came into my hands was somewhere in the latter part of November or the first part of December." (R. 23)

and frequently came to visit his parents on weekends at Omaha. The agent attempted on two different occasions to reach the applicant at his parent's home by telephoning him at that place. The agent, however, made no attempt to reach the applicant by mail either in Hastings or at his listed address in Omaha. When he did call at the Omaha address, he did not make any statement about the policy or leave any word or message concerning the policy with whomever he talked because the agent felt that the application and issuance of the policy was a personal matter for the insured and apparently should be treated confidentially. In other words, no message was left that the policy had been issued and was available for delivery at that time. The record shows that the applicant tried to get in touch with the agent several times in regard to the policy but the dates of such attempts are indefinite, so that it cannot be said from the record that the applicant contacted the agent after the agent had the policy in his possession. But, agent did recall applicant's visiting him at his home "on one or two different occasions" but did not remember the exact time.[3]

Applicant, while riding as a passenger in his own car, was killed on December 14, 1960, his 26th birthday. The car apparently ran into a tree; no other car was involved in the accident. The agent after learning of Beister's death returned the policy to his Omaha office. Several weeks after the funeral, the parents discovered a conditional receipt issued by the defendant for the $28.40 initial deposit made in reference to the application for insurance.

The policy that was issued was pre-dated to June 13, 1960, in accordance with the request made in the application. Predating is permissible in Nebraska up to a maximum of six months under the statutes of that State.[4] Subsequently, demand for payment of the policy was duly made, and after refusal, complaint was filed.

The insurance company's defense was that the applicant was fully informed of the fact that the semi-annual premium for the policy was $162.50 and that the total premium had to be paid before delivery to him of the policy and within sixty days from its effective date. The agent testified that he had no authority to deliver the policy without collecting the premium.[5] The plaintiffs insist that the conditional receipt is ambiguous and is subject to the interpretation that the applicant had sixty days within which to pay the balance of the premium due after the policy had been approved; that it was not approved until about November 1, 1960 and that the applicant's death occurred within the sixty-day period mentioned in the conditional receipt. Plaintiffs also seek recovery on the ground that since defendant did not tender the policy or make any effort to collect the balance of the premium due on the policy the defendant is liable and should not be heard to claim (1) that the contract had lapsed prior to the death of the applicant, or (2) that the policy was never in force by reason of the failure of any of the conditions set out in the instruments forming part of the contract of insurance.

The defendant in denying liability points to the clause in the conditional re-

---

3. The agent testified:
 "Q. Do you recall a time around Thanksgiving when she and Gene came to your home, and I think you and your wife were on the point of leaving for a dance? Do you recall that?
 "A. I do remember them coming over on one or two different occasions but as to the exact time, I don't know.
 "Q. You wouldn't know whether or not Gene at that time had inquired about the policy?

"A. I honestly don't remember." (R. 51)

4. R.S.Neb.1943, Section 44–503, Reissue of 1960.

5. Agent's affidavit reads in part:
 "I made it plain to Gene when the policy was delivered he would have to pay the difference between the sum which I already had in hand and the semi-annual premium at age twenty-five." (R. 5)

ceipt which establishes coverage. It reads as follows:

> "[T]he contract of insurance applied for shall take effect retroactively as the date of the application or the date of the medical examination, which ever is later, or if another date is requested * * * as of such date, * * *." (See Appendix for full text of Receipt)

Defendant then points to the next full paragraph of the conditional receipt which states:

> "If the contract of insurance takes effect hereunder and said sum received is less than the said premium, *the balance of said premium may be paid during the lifetime of the proposed insured within sixty days of the effective date of the contract, * * *"* (Emphasis supplied)

The insurance company assumed the "effective date of the contract" to be the predate of June 13 set out in the policy, and therefore contends that the sixty-day grace period allowed in the conditional receipt had lapsed before it began and there was no interim coverage at the time of the insured's death on December 14, 1960.

The nucleus of this case therefore is an interpretation of this clause which sets the limits of the interim coverage.

It is clear from Section B of the application [6] that upon approval of insured's application accompanied by payment of more than $15 he was granted coverage, and this coverage was to run until there had been a lapse. The above-quoted clause indicates that the insured had sixty days from the "effective date of the contract" to pay the balance due and prevent the lapse from occurring. The question then is, what is meant by the

"effective date of the contract" from which is measured the sixty-day allowance? If the "effective date of the contract" refers to the date the contract came into existence by the acceptance of the application, there would be no lapse because the insured died (December 14, 1960) within sixty days of this date (October 31, 1960). However, if the "effective date of the contract" refers back to the prior paragraph which establishes the retroactive date of coverage as being the predate of June 13, then more than sixty days elapsed at the time of insured's death and there would be no coverage under the terms of the conditional receipt. Once we determine what is meant by the "effective date of the contract" the question of coverage under the contract will be resolved.

The defendant, who is solely responsible for the content of the contract, has nowhere told us in its application form, in its conditional receipt, or in its issued policy just what is meant by the words "effective date of the contract." We will agree with the company that the coverage took effect as of the June 13 predate, but acceptance of this point does not compel a holding that this predate is necessarily the "effective date of the contract" referred to in the sentence in question. In fact, a thorough examination of the contract indicates to our satisfaction that the position taken by the insurance company and upheld by the trial court is clearly erroneous.

This being a question as to the true meaning of these words we are called upon to apply the normal rules used for the construction of contracts to resolve the dispute. As a starting point we must examine the words in the context of the sentence in which they are found. By doing this and by an application of the usual principle of construction, the

---

6. The pertinent part of the application reads as follows:

"B. *If at least $15, * * * is paid with this application, the contract of insurance shall take effect as provided in and subject to the terms of Conditional Receipt, * * * otherwise the contract of insurance shall take effect as of the Date of Issue of the policy* but only upon delivery to and receipt by the Applicant of the policy and payment of the premium thereon, * * *" (Emphasis supplied).

true meaning of the phrase in question is made clear to us.

The first part of the sentence in which the questioned phrase is found contains these words, "If the contract of insurance takes effect, * * *" This phrase obviously refers to the point of time at which the application is accepted and a binding contract is formed. This now being known, we look to the last part of the same sentence in which we find our questioned phrase, "effective date of the contract." Since both of these phrases appear in the same sentence and have in common the key words of "contract" and "effect" it could safely be assumed that they are used in the same context and therefore refer to the same point of time. Since there is this positive relationship between the two phrases, and since the first of these two phrases clearly refers to the date the contract came into existence, which was October 31, 1960, we conclude that the "effective date of the contract" likewise refers to the October 31st date.

To illustrate the same point in a different manner, we feel that the sentence as it is formed could be accurately paraphrased to demonstrate the positive relationship between the two clauses and illustrate the true meaning of the phrase in question. The sentence could read this way:

"*'If the contract of insurance takes effect'* the insured will 'have sixty days from the *effective date of the contract*' to pay the balance due." (Emphasis supplied)

As reconstructed here the meaning of the sentence is clear. "The effective date of the contract" refers to the date the contract takes effect by the acceptance of the application, and from that date the insured should have sixty days to pay the balance due.

A common rule of construction is that words in the contract must be given their plain and ordinary meaning, as an ordinary, average, or reasonable person would understand them. Davis v. Liberty Mutual Insurance Co., 308 F.2d 709 (8 Cir. 1962); Cass Bank and Trust Co. v. National Indemnity Co., 326 F.2d 308 (8 Cir. 1964); Prudential Insurance Co. of America v. Barnes, 285 F.2d 299 (9 Cir. 1960). 44 C.J.S. Insurance § 294, p. 1159. And, as viewed by the Nebraska Supreme Court in Koehn v. Union Fire Insurance Co., 152 Neb. 254, 40 N.W.2d 874, 878 (1950):

"The language should be considered not in accordance with what the insurer intended the words to mean, but what a reasonable person in the position of insured would have understood them to mean."

It is our belief that as understood by the ordinary layman the phrase "effective date of the contract" refers to the date the contract came into effect, the date a binding contractual obligation was created. The plain and ordinary meaning of "effective date of the contract" is not, we believe, the predate affixed to the policy. In considering the day a contract comes into effect the only legally significant date is the actual date the offer was accepted by the company. Without that date no binding contract could have come into effect regardless of the date agreed upon by the parties. It is purely a fiction to say that a contract has come into effect months before the offer was accepted. Thus applying the meaning ordinarily attached to these words we conclude that the "effective date of the contract" refers to the date the contract came into existence, October 31, 1960.

A second axiom of contract interpretation is that the Court must endeavor to apply the true intention of the parties. Home Mutual Insurance Company of Iowa v. Rose, 150 F.2d 201 (8 Cir. 1945); Indemnity Insurance Company of North America v. Pioneer Valley Savings Bank, 343 F.2d 634 (8 Cir. 1965); Garrelts v. Department of Motor Vehicles, 176 Neb. 220, 125 N.W.2d 678, 683 (1964); Koehn v. Union Fire Insurance Co., supra. We do not believe the position urged by the insurance company is consistent with the intent of the parties and it is certainly not consistent with the normal experience

and expectations of insureds in this area. When a person applies for insurance and pays a significant portion of the total semi-annual premium in advance, unless clearly stated otherwise, upon issuance of the policy he expects to receive protection from that point against future uncertainties. The insurance company is free to dispel this expectation by clearly indicating to the insured that there is no coverage until the policy has been delivered to the insured and payment received. Far from dispelling insured's belief, however, the application and conditional receipt made a distinct differentiation between applicants who pay more than $15 with their application and those who pay less than that amount. For those who pay more, as did insured herein, the conditional receipt clearly states that upon company acceptance, coverage is granted with the insured having a sixty-day period to pay the balance due. There is absolutely no indication, save this ambiguous clause in question, that this otherwise prospective term of insurance protection was not applicable in situations of predating. Therefore, it appears to us that the insurance company likewise envisioned a prospective term of insurance with the insured being granted sixty days to pay the balance due. Rather than dispelling the insured's normal expectations of coverage, the contract gives every indication that the insured's expectations were well founded. Therefore, it would seem that the insured intended and expected to receive prospective coverage from the day the application was accepted and the policy prepared by the insurance company gave every indication that it likewise intended to grant that coverage.

■ This intention is not changed merely because the policy is predated. The normal connotation attached to predating is that the date set shall determine what date premium payments are due. It certainly would not be expected to have an adverse effect on future coverage which was otherwise afforded to the insured by the issuance of the policy.

The position taken by the company is further contrary to the normal experience and expectations in that it is the business of the insurance company to insure against future risks, and it is the purpose of premiums to cover the expense of bearing that risk. When one makes a premium payment that is applied to a past period, as the company here contends was done, the company obviously assumes no risk in return for the premium payment. It is unlikely that the parties contemplated the insurance company assuming no risk nor giving up little, if anything, in return for the insured's partial payment.

We are not saying that the insurance company could not do what it is herein urging. What we are saying is, that the company is urging a position that is contrary to the normal experience and expectations in this area, and to be effective it should have clearly set forth its position in the application and conditional receipt. Far from setting forth a contrary position here, however, the contract gives every outward indication that coverage was prospectively granted. This position of accepting a partial premium, without affording any coverage or assuming any risk, should be set forth without equivocation and without disarming clauses that leave the impression coverage is being afforded if application is accepted.

■ The analysis urged by the company violates another canon of construction in that it comes to unreasonable and even somewhat absurd results. Stipcich v. Metropolitan Life Insurance Company, 277 U.S. 311, 48 S.Ct. 512, 72 L.Ed. 895 (1928); Murphy v. Travelers Insurance Co., 141 Neb. 41, 2 N.W.2d 576 (1942). If we accept the proposition that the sixty-day period runs from the June 13 predate, it would mean that the coverage granted under the conditional receipt lapsed nearly a month before the insured even applied for the policy paying his $28.40. It is an analysis that results in the coverage purchased by the partial payment lapsing two months before the contract granting the coverage came into

being; it died before it was born, which is an absurd conclusion.

The company's position also encounters considerable logical difficulty. In order to require as a precondition to a valid policy full payment within sixty days of the "effective date of the contract," the insurance company must have impliedly promised to inform the insured of the policy's issuance or tender the policy for payment during the sixty-day period. Obviously, it is impossible for the company to tender a policy before it is issued or notify an insured of its acceptance before the application is made. Therefore, the insurance company, unable to tender the policy during the sixty-day grace period, cannot in all fairness assert that it was the failure to pay the full premium that caused the lapse in the policy coverage. Yet that is the essence of its argument herein. According to the company's analysis, it couldn't possibly tender the policy during the sixty-day grace period. The insured, likewise, couldn't possibly pay the premium during this period of time that had already passed at the time of application. But because of his failure to pay, the company argues that the insured has forfeited the coverage that he admittedly had. Such is not only unfair to the insured, it is a strained and illogical approach to the problem and ought not be accepted.

 Another rule for construction of contracts is that interpretations should be sought that give meaning to all parts of the contract, and interpretations which render meaningless parts of the contract should be avoided. Sulzbacher v. Travelers Insurance Company, 137 F.2d 386 (8 Cir. 1943); Kent v. Dairyland Mutual Insurance Co., 177 Neb. 709, 131 N.W.2d 146 (1964). The reason is that if part of the contract is rendered meaningless by a particular interpretation this indicates that this interpretation is not in accord with the intention of the parties. Acceptance of the insurance company's interpretation of the sixty-day period would violate this canon and render absolutely meaningless at least two provisions of the policy as applied to situations of predating:

1. As stated earlier, the entire tenor of this conditional receipt envisions a prospective application of the sixty days, a period looking into the future during which time coverage is granted and the insured is permitted to pay the balance due without loss of coverage. Yet according to the company the sixty days start running from some date in the distant past, with the grace period expiring long before the date of the application. In this factual context it is easy to see that the company's idea of the "effective date of the contract" renders the grant of sixty days absolutely void of meaning. With the sixty-day period having expired long before the application was ever made, as far as the insured was concerned and as far as it effected policy coverage, it might just as well have never been granted. Having expired prior to the application, the so-called grace period had no application to the facts and was of no use to insured. We do not feel that the insurance company would insert a meaningless clause in its contract. Therefore, we must conclude that its interpretation of that clause is erroneous. The only way the sixty-day grant of coverage can have any meaning in this situation is if it ran into the future, thereby enabling the insured to have some advantage from it.

2. Similarly, the application and conditional receipt make a clear differentiation between the applicants who pay more than $15 down on their total premium payment from those who pay less than that amount. Those making an initial payment of less than $15 are required to pay the balance due before any coverage takes effect. However, when an applicant is accepted and has paid more than $15, his policy comes into effect retroactively as of the date of the application or medical examination whichever is later, or if another date is set of that date. The company's interpretation of the "effective date of the contract" would render this intentional segregation meaningless. A person who pays less than $15 is admittedly given no coverage.

However, according to the company, a person who predates and pays more than the $15 is likewise given no coverage since his supposed coverage lapsed prior to his application. Thus, a predating applicant paying more than $15 is no better off than the one paying less than $15.00. His extra payment has secured him no extra benefit. Having the differentiation between applicants eliminated by the interpretation advanced by the insurance company would not seem to be consistent with the clear wording of the policy and the intention of the parties.

To summarize, in viewing the various rules of contract interpretation, we conclude that the interpretation of the words "effective date of the contract" urged on us by the insurance company is not consistent with the normal connotation of these words either independently or in the context in which they are used. Furthermore, the company's interpretation is contrary to the normal expectations of the parties, violates simple logic, and renders absolutely meaningless two carefully drawn provisions of the contract. We, therefore, believe that the interpretation of the "effective date of the contract" as the policy predate of June 13 cannot be the correct interpretation. On the other hand, the interpretation advanced by the insured's beneficiaries is the more acceptable one.

[10] Our decision in this case has been reached by analyzing the face of the contract and the conflicting arguments concerning it, and deciding which of the two positions is sounder in light of the various guides to contract interpretation. Resolving the dispute in this way, there is no doubt in our minds that the insurance company's interpretation of the contract is lacking in substantial merit. Therefore, we did not find it necessary to tip the scales of a debatable interpretation against defendant by resorting to the well known axiom that a "contract of insurance is to be construed liberally in favor of insured or his beneficiary and strictly as against insurer," with all doubts being resolved against the insurer. Northwestern Mutual Life Insurance Company v. United States National Bank of Omaha, 267 F.2d 565 (8 Cir. 1959); Aetna Casualty and Surety Company v. Stover, 327 F.2d 288 (8 Cir. 1964); Schultz v. John Hancock Mutual Life Insurance Company, 134 Neb. 885, 280 N.W. 165 (1938). However, our failure to make reference to it earlier in the decision should not be used to discount our belief that this rule of construction might well be applied to the factual context of this case.

As we have pointed out, the insurance company in essence is arguing that a forfeiture has been committed. The law is very clear that forfeitures are carefully watched, strictly construed and avoided when possible. Springfield Fire and Marine Insurance Company v. McLimans, 28 Neb. 846, 45 N.W. 171 (1890). Furthermore, we feel it is abundantly clear from our past discussion that the phrase in question could reasonably be construed in favor of insured's beneficiaries. Therefore, at the very least we have a situation where there are two conflicting interpretations of an insurance clause, one of which would cause a forfeiture, the other coverage. In such a situation there can be no doubt as to the result. The policy is to be construed in favor of the insured to avoid the forfeiture. Morse v. General American Life Insurance Company, 130 Neb. 37, 263 N.W. 676 (1935).

If the insurance company wants to insert conditions or restrictions which deny coverage until the full premium is received, it must word them in clear unambiguous language. Failing to do so it cannot expect the courts to construe ambiguous terms in its favor to deny coverage to an unwary insured. With this approach the same result is reached. The ambiguity which clearly exists must be resolved in favor of the insured or his beneficiary and against the insurance company who is responsible for the ambiguity. The "effective date of the contract" must be interpreted as the date the contract came into being by the acceptance of the application, October 31, 1960. Thereafter, the insured had sixty days in

which to make payment, which period of time had not lapsed at the time of his death on December 14, 1960. The beneficiaries are therefore entitled to recovery.

The issue having been otherwise decided, it is not necessary for us to consider the trial court's application of the estoppel analysis to this factual situation.

As a final point, it could conceivably be argued from the face of the insurance contract that the premium payment must be paid during the lifetime of the insured. This contention is without merit. Before the company under the terms of this contract could demand payment during the lifetime of the insured it is under a duty to tender the policy during his lifetime. It appears clear from the record that the insured was not even notified that his application had been accepted. Therefore, absent any notification or tender during the insured's lifetime, the requirement of payment while living during the sixty days must be considered as waived by the insurance company. The insured cannot be charged with the company's failure to tender the policy during his lifetime, and until such tender and consequent failure of the insured to pay the amount due, the company is in no position to argue that the insured has defaulted.

Furthermore, to require that payment be made during the insured's life would effectively hold that no interim insurance coverage could possibly be granted between the time of company acceptance and the ultimate payment by the insured. The conditional receipt clearly affords retroactive interim coverage, so an interpretation effectively voiding this coverage will not be followed. Funke Estate v. Law Union & Crown Ins. Co., 97 Neb. 412, 150 N.W. 262 (1914).

For the reasons set out herein, the decision of the trial court denying this recovery must be set aside as being clearly erroneous. This case is reversed with judgment ordered in favor of appellants, Joseph and Irene Beister, and is remanded for the sole purpose of determining the right of appellants to recover attorney's fees in this action.

Judgment reversed and remanded.

## APPENDIX
## "CONDITIONAL RECEIPT FOR ADVANCE PAYMENT WITH APPLICATION FOR NEW INSURANCE

Proposed Insured.........,
No. 856156

"RECEIVED from Eugene J. Beister the sum of $28.40 on account of insurance application to the John Hancock Mutual Life Insurance Company bearing the same date and number as this Conditional Receipt.

"If this sum is at least $15.00 or the premium according to the Company's published rates and minimum amount requirements for the policy and interval of payment selected in the application and if the Company at its Home Office shall determine in writing that each person proposed for insurance was on the date of the application or of any required medical examination, whichever date is later, acceptable under the Company's rules at the classification and for the amount and plan of insurance and additional benefits, if any, applied for, *the contract of insurance applied for shall take effect retroactively as of the date of the application or the date of any required medical examination, whichever is later, or if another date is requested in the application and accepted by the Company,* as of such date, notwithstanding any change in acceptability due to disease acquired or injury sustained after the effective date.

"*If the contract of insurance takes effect hereunder* and if the said sum received is less than the said premium, the *balance of said premium may be paid* during the lifetime of the proposed insured *within sixty days from the effective date of the contract and prior to the delivery of the policy to the applicant,* but if the balance is not so paid, the contract of insurance shall continue only for such proportionate part of said interval of payment as the amount paid under this conditional receipt bears to said premium.

"The application shall be deemed to have been declined if it has not been approved by the Company within sixty days from its date and the amount paid shall be returned upon surrender of this receipt. Any check tendered is received subject to collection only. (Emphasis supplied)

> John Hancock Mutual Life Insurance Company
> By Harry R. Meister

September 14, 1960"

BLACKMUN, Circuit Judge (concurring):

I concur in the result Judges Gibson and Vogel reach but I arrive at that result by falling back upon the axiom, noted but not actually used by the majority, that doubt in a contract of this kind is to be resolved against the insurer. I say this because I am not certain, as the majority appears to be, that the "effective date of the contract" was October 31, 1960. It seems to me that when one views the application and the conditional receipt in their entirety, a strong argument emerges that the effective date of the policy is the date of the required medical examination (which this record shows took place on September 21, 1960, but was supplemented by a requested urinalysis).

Had Mr. Beister died on October 28, before the formal home office acceptance of October 31, but after the completion of the medical examination, I suspect these plaintiffs would still be asserting coverage. If so, I would be hard put to deny it to them. See Gaunt v. John Hancock Mut. Life Ins. Co., 160 F.2d 599 (2 Cir. 1947), cert. denied 331 U.S. 849. And I hope that the majority opinion, with its stress upon the formal acceptance date, does not stand as authority opposing the result reached by Judge Hand in *Gaunt*.

This does not mean that I am fully persuaded that the medical examination date is the vital one. I merely emphasize that a number of the points so effectively made by the majority against the selected predate of June 13 have no application at all against the medical examination date. In this respect, I feel the insurer substantially weakened its position when it chose to base its case on June 13.

For me, any decision made, as it must be here, on such a confusingly phrased conditional receipt as this one, is bound to possess its logical difficulties. For example, what is the significance of the phrase, in the third paragraph of the conditional receipt, relating to the continuance of insurance only for a "proportionate part of said interval payment" (in this case, 32 days), a phrase not explained away in the majority opinion. But even that phrase is not without its ambiguity. It is not clear from what date the interval is measured; neither is it apparent what coverage exists if the pro rata period were to exceed 60 days.

The problem is akin to those distressingly difficult ones which emerge from a poorly drawn will. With the receipt here drawn by the insurer, however, we have the axiom to fall back upon. That is where I find myself and, using its convenient presence, I concur in the result.