MABEL D. MORSE, APPELLEE, V. GENERAL AMERICAN LIFE INSURANCE COMPANY, APPELLANT.

FILED DECEMBER 6, 1935. No. 29404.

*Loren H. Laughlin, Allen May* and *J. R. Burcham,* for appellant.

*Waldo Wintersteen* and *Cook & Cook, contra.*

Heard before GOSS, C. J., GOOD, EBERLY, DAY, PAINE and CARTER, JJ., and MUNDAY, District Judge.

GOOD, J.

Plaintiff sued to recover upon a policy of life insurance. Defendant pleaded that the policy contained a provision that the company should not be liable, except for premiums

paid, in the event that insured should commit suicide within one year from the date of the policy, and alleged that the insured had committed suicide within one year. Plaintiff had judgment, and defendant has appealed.

The cause was determined upon a demurrer to the defendant's answer. The pleadings reflect the following pertinent facts: November 6, 1923, the Missouri State Life Insurance Company issued to plaintiff's husband, Harry S. Morse, a 20-payment life policy for $2,000, which contained a clause providing that, in the event assured committed suicide within one year from the date of the policy, the recovery should be limited to the premiums paid. In 1933 the Missouri State Life Insurance Company transferred all of its assets to the defendant, and the latter assumed all the obligations of the former company. Morse paid his premiums to the former company up to and including the year 1933, when he sent to defendant a request in the following form:

"Missouri State Life Insurance Company
"Home Office, Saint Louis
"General American Life Insurance Company.

Policy No. 465333

"I hereby request the Missouri State Life Insurance Company to change the above numbered policy as follows:

"Reduce to $1,000 as of original date of issue with outstanding loan of $242.00.

"I elect the automatic premium loan option.

"This is supplemental to the application on which the policy herein referred to was issued, and it is understood that this forms a part of the contract in the same manner as said application.

"Dated at Fremont, Nebr.; this 6 day of December, 1933.

"Harry S. Morse, Insured."

The defendant took up the old policy for $2,000 and issued a new policy for $1,000. The form of the new policy was identical with that of the old, save that the amount of the insurance was stated to be $1,000 and the premium was reduced to one-half that provided in the original policy.

To this policy were attached the application for the original insurance, including original medical examination, and the above request. The new policy issued contained this recital:

"This insurance is granted in consideration of the application herefor and of the payment in advance of Thirty-nine and 82/100 Dollars being the premium for the first year's insurance under this policy ending on the 6th day of November, 1924. The insurance will be continued thereafter upon the payment of the * * * annual premium of Thirty-nine and 82/100 Dollars, on or before the sixth day of November in every year during the continuance of this policy, until premiums for twenty policy years, including the first, have been paid.

"In witness whereof, the General American Life Insurance Company, successor to the Missouri State Life Insurance Company has caused this policy to be signed by its President and its Secretary, and to be duly attested by its Registrar, this 27th day of December, 1933, subject to our assumption certificate dated September 7th, 1933."

The assumption certificate referred to was the assumption of risk when the defendant took over the assets of the Missouri State Life Insurance Company. The number of the original policy was 465333. The same number was given to the new policy. The new policy contained the following indorsement:

"Home Office        St. Louis
        "Number 465333
        "20-Payment Life Policy
    "Annual Dividend; Life Income and Waiver
            of Premium Disability
"$1,000
    "Insurance on the Life of Harry S. Morse
            "Annual Premium $39.82
    "Date Nov. 6th, 1923."

Defendant contends that an entirely new policy was issued on the 27th day of December, 1933, and that, the insured having committed suicide within one year from

that date, there could be no recovery upon the policy except for the amount of the premiums paid upon that particular policy. Plaintiff contends that, although a new policy in form was issued to the insured, it was the intention and understanding of both parties that it was a continuation of the old policy to the extent of $1,000, and that the suicide clause had no operation, since the insured did not commit suicide until more than ten years after the issuance of the original policy.

It may be observed that the record shows that the insured was 35 years of age at the time the first policy was issued. The age given in the new policy is stated at 35 years. The new policy was not issued until more than ten years after the issuance of the first; yet the premium remained the same for the same amount of insurance. There was no new medical examination; there was no application for a new policy; the date of the premium payment was made to correspond with that of the old policy, to wit: November 6, instead of December 27, the date of the issuance of the new policy.

Counsel for the respective parties have cited us to many cases dealing with somewhat similar situations. None of them is expressly in point; nor have we been able to find any case where the facts were, in all respects, similar to those involved in the instant case. Defendant relies to a considerable extent upon the case of *Gans v. Aetna Life Ins. Co.*, 214 N. Y. 326, 108 N. E. 443, and plaintiff relies to a considerable extent upon the later case of *Silliman v. International Life Ins. Co.*, 131 Tenn. 303, 174 S. W. 1131. The facts in the instant case differ to such an extent from the facts in those cases that we do not consider that either is a precedent to be followed in this case.

We think that the instant case must be ruled by certain well-settled principles of law, one of which is: If any uncertainties or ambiguities appear in an insurance policy which may be solved by either one of two reasonable constructions, the one that is the more favorable to the insured and which will give life, force and effect to the policy should

be adopted. Another is that contracts must receive a reasonable construction so as to give effect to the intention of the parties thereto and carry out, rather than defeat, the purpose for which they were executed.

In the instant case, it is clear that the insured made no application for a new policy. What he requested was modification of his old policy. The modification desired was a reduction in the amount of the policy by one-half, and likewise a reduction by one-half of the premium which he would be required to pay. His request was for that and nothing more. Defendant, in attempting to comply with that request, instead of placing a rider or an indorsement upon the policy stating the modification, issued a new policy in the precise form of the old policy. The new policy shows on its face that it was to operate as a continuation of the old policy but in a reduced amount, because it recites the date as November 6, 1923; it recites the age of the assured as 35 years. The date given was the date of the original policy; the age of assured was his age at the time the original policy was issued. Clearly, if it was an entirely new policy, the premium rate would be higher when issued ten years later and when the insured was ten years older; yet the premium remained the same. No new medical examination was required; no new application by assured was required. The original application and the request for reduction in the amount of the insurance were each attached to the new policy. If it was an entirely new policy and not dependent upon the original application, there would be no reason for attaching the original application thereto. Moreover, if it was an entirely new policy, the defendant would be violating section 44-802, Comp. St. 1929, which provides that no life insurance company, doing business in this state, shall enter into any contract of insurance upon lives within this state without having previously made, or caused to be made, a prescribed medical examination of the assured by a legally qualified and practicing physician. We prefer to believe that the defendant acted in good faith and did not intend to violate this statute.

''Under all the circumstances disclosed, we are impelled to the view that it was the intention of the parties that the new policy should operate as an extension of the old policy to the amount of $1,000. We think that the effect of what was done is precisely the same as if the defendant had attached to the old policy a rider, reciting that the amount of the insurance and the premium were each reduced one-half. Clearly, that is what was done by the issuance of a new policy. The date of the effective insurance was November, 1923, and not December, 1933. The insured did not commit suicide until more than ten years after the issuance of the original policy. The suicide clause constitutes no defense.

The judgment of the district court is right and is

AFFIRMED.