VAN ROBERT SWANSON, A MINOR, BY AND THROUGH HIS
MOTHER AND NEXT FRIEND, JEAN R. SWANSON,
APPELLEE, V. FIRST FIDELITY LIFE INSURANCE
COMPANY, A NEBRASKA CORPORATION, APPELLANT.

335 N.W.2d 538

Filed June 17, 1983. No. 82-389.

Gary J. Nedved of Marti, Dalton, Bruckner, O'Gara & Keating, P.C., for appellant.

J. Michael Fitzgerald of Carpenter, Fitzgerald & Coe, P.C., for appellee.

KRIVOSHA, C.J., BOSLAUGH, MCCOWN, WHITE, HASTINGS, CAPORALE, and SHANAHAN, JJ.

CAPORALE, J.

Defendant-appellant, First Fidelity Life Insurance Company (First Fidelity), appeals from the summary judgment entered in favor of the plaintiff-appellee, Van Robert Swanson, a minor, under a policy of life insurance covering plaintiff's father, Robert L. Swanson. We affirm.

First Fidelity issued a $30,000 10-year nonparticipating convertible term policy to Robert L. Swanson on May 26, 1970, which provided: "At any time more than three full years before the Expiry Date on legal surrender while in full force, this Policy may

be exchanged without evidence of insurability for a term policy of the same Amount of Insurance on any plan other than term insurance issued by the Company at the time of such exchange." The expiry date was May 26, 1980. It also issued to Swanson a $15,000 whole life nonparticipating policy dated May 26, 1980. Both the 1970 and 1980 policies provided for a suicide defense in the following language: "If the Insured shall commit suicide while sane or insane within two years from the Policy Date, the liability of the Company under this policy shall be limited to the return of premiums actually paid." Each policy also stated: "This Policy, which includes all of its other pages, riders, endorsements, and the Application, constitutes the entire contract between the parties." The application attached to the 1980 policy recites: "CHANGE PLAN AND/OR AMOUNT, BENEFITS, ETC., TO: ☒ Convert to 15,000 Executive Preferred    Date Policy 5/26/80    $26^{04}$    PAC." The application for the 1980 policy refers by number to the 1970 policy.

According to First Fidelity, it received a telephone call from Robert Swanson, wherein he indicated he wanted to do something about insurance; on June 30, 1980, First Fidelity's Ron Dodd met with Swanson, at which time Swanson said he wanted a policy of life insurance naming his son as beneficiary, and further indicated that he could afford a policy in the amount of $15,000; an application for such a policy was executed by Swanson on June 30, 1980, but was dated May 26, 1980, because Swanson's birthday was May 27 and this allowed Swanson to get a better premium rate; Dodd, after checking into Swanson's physical condition and finding it satisfactory, inserted the term "convert" on the application so that Swanson would not be required to take a physical examination; and Swanson admitted to Dodd that he, Swanson, understood the whole life policy was a new policy of insurance.

The insured committed suicide on September 16, 1981.

Our task is to determine whether there here exists no genuine issue as to any material fact, the ultimate inferences to be drawn from those facts are clear, and that plaintiff herein is entitled to judgment as a matter of law; for it is only under such circumstances that summary judgment may properly be granted. *Interholzinger v. Estate of Dent*, *ante* p. 264, 333 N.W.2d 895 (1983); *Galyen Petroleum Co. v. Hixson*, 213 Neb. 683, 331 N.W.2d 1 (1983).

First Fidelity relies on the rule that an insurance policy should be construed as any other contract and should be given effect according to the ordinary sense of the terms used; and if those terms are clear, they are to be applied according to their plain and ordinary meaning. *Hemenway v. MFA Life Ins. Co.*, 211 Neb. 193, 318 N.W.2d 70 (1982). It argues that under that rule the language of its "entire contract" clause makes the 1980 policy the only contract between the parties; therefore, the relevant suicide defense period began to run May 26, 1980. The difficulty with that argument, however, is that the entire contract clause itself makes the application for the 1980 policy a part of the contract. The language of that application ties the 1980 policy to the 1970 policy and refers to the transaction as a change in, and conversion of, the 1970 policy. The explanation that the transaction was labeled as a conversion in order to give Swanson the benefit of a lower premium and to make a medical examination unnecessary does not alter the fact that First Fidelity elected to waive the option expiration by treating the transaction as if it were within the conversion period contained within the 1970 policy. It cannot treat it thusly for some purposes and ignore that same character for another purpose. Nor did Swanson's misunderstanding thereof affect the nature of the transaction; it remained what First

Fidelity made it: a conversion of the 1970 policy. Indeed, the clear meaning of the words used in the conversion option requires that it be exercised at least 3 years prior to the policy's expiration date, perhaps to avoid the very problem presented by this case. In any event, for whatever reason, First Fidelity clearly elected to waive the time limitations imposed by the conversion option.

Resolving that issue, however, does not determine the lawsuit. It appears to be the general rule that even where a policy is issued under the provisions of a conversion option, whether a new, distinct, and independent contract results will depend upon the extent to which the terms of the substituted policy differ from the terms of the policy containing the option. 1B J. Appleman, Insurance Law and Practice § 491 at 338 (1981); 9 G. Couch, Cyclopedia of Insurance Law § 40:52 (2d ed. 1962). *Provident Life Ins. Co. v. Kegley*, 199 Va. 273, 99 S.E.2d 601 (1957), held that an endowment life policy issued pursuant to the conversion provisions of a group life and disability policy was a new and separate policy because it contained different terms and covered different risks than had the group policy; therefore, the suicide defense period was to be computed from the date of the new policy, not from the date of the group certificate. Likewise, *Gans v. Aetna Life Ins. Co.*, 214 N.Y. 326, 108 N.E. 443 (1915), reached a similar result upon finding that the rights, privileges, advantages, and obligations under the substituted policy were different than those in the former policy. On the other hand, *Baugh v. Met. Life Ins. Co.*, 173 Tenn. 352, 117 S.W.2d 742 (1938), held that where the substituted individual life insurance policy covered the same risk as the former group policy, the individual policy was not an independent contract, and therefore the time on the suicide defense ran from the date of the group policy. Also, *Founders Life Assurance Co. v. Poe*, 242 Ga. 748, 251 S.E.2d 247 (1978), held that where each renewal of credit life

insurance was issued under and subject to the same terms as the master group credit policy, and each new certificate of insurance was essentially the same as the certificate replaced, the suicide provision of the last policy related back to the original transaction and would be construed as a continuation of the obligations and conditions of the original policy. A number of cases illustrating the rule are collected in Annot., 37 A.L.R.3d 933 § 9 at 951-54 (1971). One of the more significant statements, however, is found in *Commonwealth Life Ins. Co. v. Jackson*, ____ Ind. App. ____, 432 N.E.2d 1382 (1982), which, in holding that an individual policy issued under the conversion option of a family policy was not a new contract, noted that the results reached are not always consistent and depend to a great extent on the unique facts and circumstances of each case.

In *Morse v. General American Life Ins. Co.*, 130 Neb. 37, 263 N.W. 676 (1935), the insured purchased a life policy for $2,000, which was issued on November 6, 1923. Ten years later the insured requested the coverage be reduced to $1,000. The insurer issued a new policy, which was identical to the earlier one, except for the reduced amount of coverage. The insured then committed suicide within the defense period contained in the new policy. We held the suicide clause therein did not constitute a defense; the operative clause was the one contained in the original policy. There are, as First Fidelity points out, factual distinctions between *Morse* and the instant case. In *Morse* the original application was attached to the new policy (there was no new application); the insured's age in the new policy was reflected as being that stated in the old policy; and the premium remained the same for the same amount of insurance. Here, the 1970 policy insured Swanson only for a term of years, whereas the 1980 policy insured Swanson for life; the 1970 policy accrued no nonforfeitable cash values, whereas the 1980 policy did accrue such; and the 1970 policy computed its

premium on the basis the insured was 29 years of age, whereas the 1980 policy computed its premium on the basis the insured was 39 years of age. Notwithstanding those factual distinctions, however, the principal risk insured against in both policies was the same: the death of Swanson from whatever cause. As to that risk, the only thing which changed was the amount of coverage, it being reduced by half. We conclude, therefore, that under the facts and circumstances of this case the 1980 policy was not a separate and distinct contract from the 1970 policy but, rather, could only constitute a continuation of it. Thus, the time on the suicide defense began to run on May 26, 1970.

The trial court was correct in granting a summary judgment for plaintiff and against First Fidelity.

AFFIRMED.