(829 P.2d 605)

No. 66,705

LINDA JEAN SONDEREGGER, *Appellant,* v. UNITED INVESTORS LIFE INSURANCE COMPANY, *Appellee.*

—

Opinion filed April 3, 1992.

*Ross Wichman,* of Anderson & Wichman, of Hays, for appellant.

*Donald F. Hoffman,* of Dreiling, Bieker & Hoffman, of Hays, for appellee.

Before ELLIOTT, P.J., RULON, J., and DAVID S. KNUDSON, District Judge, assigned.

RULON, J.: Plaintiff, Linda Sonderegger, appeals the district court's grant of summary judgment to defendant, United Investors Life Insurance Company, on the issue of whether a portion of a policy insuring the life of her deceased husband is subject to a provision excluding the insurer from liability in the event of suicide. We affirm.

## FACTS

On January 6, 1975, defendant issued a modified premium whole life insurance policy (No. 10-99-89) to Linda Sonderegger as owner and beneficiary of the policy. Plaintiff's husband, Donald Sonderegger, was the insured under the policy, which has a face amount of $50,000. The policy limited defendant's liability for Donald's death from suicide through the following language: "If the Insured shall commit suicide while sane or insane within two years from the Policy Date, the liability of the Company shall be limited to the amount of premiums actually paid hereunder."

The policy also contained a conversion option provision which granted Linda the right to convert the policy on its tenth anniversary into other insurance as set forth in either option A or option B of the provision. Both options stated the new policy

would be issued without evidence of insurability if the new policy had the same face amount or less as the original policy. The provision contained the following language: "If the policy is converted in accordance with provisions A or B above, the suicide clause shall be void in the new policy resulting from such conversion, and the new policy will be incontestable from its date of issue."

In a letter dated November 9, 1984, defendant notified plaintiff of the approaching tenth anniversary of the policy and advised that pursuant to the policy, plaintiff could continue the coverage as an ordinary life plan or convert it to a decreasing term insurance plan. Defendant further explained that because its new life insurance plans give greater value for the money, "we are extending to you the option to: *purchase any policy now offered* by our Company up to the amount of your Modified Premium Whole Life Policy *without evidence of insurability.*"

On December 6, 1984, plaintiff and her husband Donald completed an "MPWL Conversion Application for Policy Number *10-99-89.*" The policy being applied for was termed "VITALIFE ART" for a face amount of $100,000. The application contained the following statement above the signature lines: "I acknowledge that the coverage provided by Policy No. *10-99-89* will permanently terminate when the policy applied for above goes into effect." In addition to this conversion application, Donald completed a regular application for insurance.

Pursuant to these applications, an annual renewable term life insurance policy, No. 33-09-67, was issued on January 7, 1985. The face amount of the policy was $100,000, the insured was Donald, and the owner/beneficiary was plaintiff. The policy also contained a suicide exclusion: "If the Insured commits suicide, while sane or insane, within two years from the policy date, our liability will be limited to the premium paid."

On July 6, 1986, Donald Sonderegger died from an apparently self-inflicted gunshot wound. In response to a demand for payment of the full $100,000 under policy No. 33-09-67, defendant notified plaintiff's counsel by letter dated September 9, 1986, that defendant considered only $50,000 of the coverage to be converted and not subject to the suicide exclusion clause. Defendant further advised the remaining $50,000 was new coverage; there-

fore, defendant was not liable for that amount as the suicide occurred within two years of the policy's issue date. The letter additionally stated, "The new policy [No. 33-09-67] was issued based on the conversion request and application in the amount of $100,000."

Plaintiff eventually filed suit for the $50,000. Both plaintiff and defendant filed motions for summary judgment on the issue of whether the entire $100,000 coverage provided in policy No. 33-09-67 was converted from policy No. 10-99-89 and thus not subject to the suicide exclusion, or whether only $50,000 of the coverage was converted, so that the remaining $50,000 was new coverage subject to the exclusion. The parties reserved for jury trial the factual issue of whether Donald committed suicide. Ultimately, a jury found Donald committed suicide.

With regard to the parties' motions for summary judgment, the district court found the two policies essentially identical except for the type and amount of coverage. Additionally, the court found the conversion options contained in the original policy did not allow a conversion to a policy with a greater face value. The court concluded: The second policy did not result from a conversion pursuant to the original policy, but from the exercise of the option contained in defendant's November 9, 1984, letter to plaintiff; the second policy was issued after completion of not only the conversion application, but a regular application for insurance; defendant's risk increased with the doubled coverage extended by the second policy; and defendant properly treated the second policy as half converted coverage and half new coverage when acting upon plaintiff's claim.

## CONSTRUCTION OF POLICY

Plaintiff premises her argument on the theory that the second policy, No. 33-09-67, was obtained by exercising the conversion option defendant presented to her in the November 9, 1984, letter. She then claims that a suicide exclusion in a converted life insurance policy runs from the original policy's date of issue, regardless of any change in the amount of death benefits. Plaintiff further claims the risk insured against in the two policies is the same, i.e., Donald's death. Therefore, the two policies are sub-

stantially similar and are the same contract, despite the increase of the death benefit from $50,000 to $100,000.

To the contrary, defendant argues the increased death benefit in the second policy prevents part of that policy from being a continuation or conversion of the first policy and only the first $50,000 in death benefits under the second policy is continued from the old policy. Defendant further asserts the second $50,000, the amount by which the second policy's death benefit was increased, is new coverage. Therefore, defendant argues the suicide exclusion in the second policy relieves it from liability under the policy for $50,000.

Our Supreme Court has said:

"Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. [Citations omitted.] When a summary judgment is challenged on appeal, an appellate court must read the record in the light most favorable to the party who defended against the motion for summary judgment. [Citations omitted.]" *Patterson v. Brouhard*, 246 Kan. 700, 702-03, 792 P.2d 983 (1990).

The general rule is that where an insurance policy is issued under a conversion option, whether a new, distinct, and independent contract results will depend upon the extent to which the terms of the substituted policy differ from the terms of the policy containing the option. *Swanson v. First Fidelity Life Ins. Co.*, 214 Neb. 654, 657, 335 N.W.2d 538 (1983).

Plaintiff first cites and discusses *Swanson* in support of her contention that the second policy is converted coverage. In *Swanson*, on May 26, 1970, the insurer issued a $30,000 10-year nonparticipating convertible term life policy to Robert L. Swanson. The policy contained the following conversion option: " 'At any time . . . this Policy may be exchanged without evidence of insurability for a term policy of the same Amount of Insurance on any plan other than term insurance issued by the Company at the time of such exchange.' " 214 Neb. 654, 655.

Pursuant to this option, Swanson was issued a $15,000 whole life nonparticipating policy on May 26, 1980. This policy, like the first, contained a two-year suicide exclusion. The application attached to the 1980 policy stated this policy was a conversion

to a $15,000 benefit and referred to the 1970 policy by its number. On September 16, 1981, Swanson committed suicide. 214 Neb. at 655-56.

In deciding the issue of whether the suicide exclusion dated from 1970 or 1980, the *Swanson* court first recited the general rule concerning policy conversion or continuation. 214 Neb. at 657. The court then compared the terms of the two policies. The 1970 policy was for a term of years and accrued no nonforfeitable cash value. The 1980 policy was for life and accrued a nonforfeitable cash value. The premium calculation for the 1970 policy was based on an insured age of 29 years, while that for the 1980 policy was based on an age of 39 years. 214 Neb. at 658-59. The court concluded,

"Notwithstanding those factual distinctions, however, the principal risk insured against in both policies was the same: the death of Swanson from whatever cause. As to that risk, the only thing which changed was the amount of coverage, it being reduced by half. We conclude, therefore, that under the facts and circumstances of this case the 1980 policy was not a separate and distinct contract from the 1970 policy but, rather, could only constitute a continuation of it." 214 Neb. at 659.

Because the suicide exclusion ran from the date the first policy was issued, the insurer was liable for the death benefit designated in the second policy. 214 Neb. at 659.

In *Swanson*, as here, the conversion options limited the right to convert or exchange the first policy to a second policy for the same amount of insurance. In *Swanson*, while the second policy was not for the same amount of insurance, it was for a *lesser* amount. Thus the insurer's liability from the risk of the insured's death was not increased by the second policy beyond the amount specified in the first policy's conversion option. In the present case, the first policy insured Donald's life for $50,000, but the second policy insured his life for $100,000. United Investors' risk of liability for Donald's death increased by an extra $50,000 of coverage.

Coverage extended by the second policy which does not exceed the amount specified in the first policy's conversion option is a characteristic shared by other cases holding the second life insurance policy to be a continuation of the first life insurance policy. In *Morse v. General American Life Ins. Co.*, 130 Neb.

37, 263 N.W. 676 (1935), cited by the *Swanson* court, the insurer issued a $2,000 life insurance policy to the insured in 1923. In 1933, the insured requested the insurer to decrease the coverage to $1,000. The second policy was issued and was identical to the first policy, except for the amount of death benefits and a premium which was also decreased by half. Attached to the second policy were the application and the medical examination for the first policy. The insured committed suicide within one year of the issue of the second policy. 130 Neb. at 38-39.

The insurer denied payment of the $1,000 death benefit, arguing the second policy was a new contract and therefore its one-year suicide exclusion did not run from the first policy's date of issue. 130 Neb. at 39. The court first noted that the premiums under the two policies were the same for the same amount of insurance. Furthermore, the insured did not undergo a medical examination as proof of insurability or complete another application to obtain the second policy. 130 Neb. at 40.

The court found it clear that the insured had never applied for a new policy, but only requested modification of the first policy. Also, the first premium paid under the second policy was recorded as having been paid on the date the first policy was issued, and the premium payment schedule remained the same. The insured's age was recited as the same in 1923 and 1933. If an entirely new policy had been intended, the premiums under the second policy would have been higher because the insured was 10 years older. Also, no new medical examination or application was required for the issuance of the second policy. 130 Neb at 41. The new policy was merely a continuation of the old, so the suicide exclusion ran from 1923, not 1933. 130 Neb. at 42.

As with *Swanson*, the *Morse* decision is distinguishable from the present case because in that case the insurer's risk decreased under the new policy, not increased. Another distinguishing feature in *Morse* is the absence of further proof of insurability provided by the insured when he requested modification or conversion of his first policy. No new application was completed and no new medical examination was done. In the present case, Donald Sonderegger completed a regular application for insurance in addition to an application for conversion of his policy. This

regular application provided United Investors with information regarding Donald's health at the time he applied for an extra $50,000 death benefit when he also requested conversion of his original $50,000 policy.

Plaintiff cites numerous other cases in support of her argument. We have carefully reviewed those cases and conclude they are distinguishable from the facts before us.

*Binkley v. Manufacturers Life Insurance Co.,* 471 F.2d 889 (10th Cir. 1973), cited by defendant, supports the decision of the district court in our case. The insurer issued a group life insurance policy to the Bank of Denver on May 9, 1961, insuring the bank's employees. The insured was issued a "Certificate of Insurance" on May 9, 1966, after taking a job with the bank. This certificate contained a clause allowing the insured, upon termination of employment, to convert his group coverage to individual coverage without evidence of insurability. Various conditions limited this option, including a condition that the amount of insurance under the individual policy could be no more than the amount of insurance terminated by the conversion. 471 F.2d at 890.

When the insured left his employment, he applied for an individual policy. This policy was issued May 26, 1969, and contained a one-year suicide exclusion. On November 5, 1969, the insured committed suicide. 471 F.2d at 891.

The *Binkley* court, in deciding when the suicide exclusion period began running, stated:

"[I]f the terms of the individual policy were the same as those of the group policy or if the terms of the individual policy were in accord with the provisions of the conversion clause in the group policy, then the individual policy and the group policy would be deemed a single, continuing contract to the end that the suicide clause in the individual policy would have commenced to run as the date of issuance of the group policy and as to the insured as of May 9, 1966." 471 F.2d at 891.

The court continued, "In our view, the individual policy issued the insured differs from not only the general terms in the group policy, but differs also from the provisions in the conversion clause in the group policy." 471 F.2d at 892. Among the differences between the two policies noted by the court was a varying amount of coverage. Under the group policy, the insured had $12,000 of coverage. But the individual policy had a face value of $15,000,

despite the group policy conversion clause which limited the value of a new policy to the amount of insurance under the group policy. The court also noted the insured underwent a medical examination in applying for the individual policy. Summary judgment for the insurer was affirmed. 471 F.2d at 891-93.

Based upon the record before us, we are convinced defendant issued a $100,000 policy insuring the life of Donald Sonderegger on the basis of the application to convert an existing $50,000 policy and the application for an additional $50,000 of insurance. This additional coverage was not continued from the first policy, but was new coverage. We are further convinced the two-year suicide exclusion in the $100,000 policy relieves defendant of its liability to pay the beneficiaries under this policy the additional $50,000 death benefit.

Affirmed.