**In re Phillip HODES, Debtor.**

**Phillip Hodes, Appellant,**

**v.**

**Lawrence S. Jenkins; Roger W. Hood, M.D.; and Eric C. Rajala, Trustee, Appellees.**

**BAP No. KS–03–035.**

**Bankruptcy No. 98–20040–7.**

United States Bankruptcy Appellate Panel of the Tenth Circuit.

April 13, 2004.

Cynthia F. Grimes, Grimes & Rebein, L.C., Lenexa, KS, for Appellant.

Mark S. Carder, Stinson Morrison Heckler LLP, Kansas City, MO, Eric C. Rajala, Law Office of Eric C. Rajala, Overland Park, KS, for Appellee.

Before BOHANON, CORNISH, and STARZYNSKI [1], Bankruptcy Judges.

## OPINION

STARZYNSKI, Bankruptcy Judge.

Debtor Phillip Hodes ("Debtor") appeals an order of the United States Bankruptcy Court for the District of Kansas denying Debtor's claim of exemption in the cash surrender value of a life insurance policy. For the reasons set forth below, we affirm in part and reverse in part.

## I. *Background*

The Debtor is a Kansas resident. He had four life insurance policies, including a Connecticut Mutual Life ("CML") insurance policy dated July 12, 1994. Debtor was sued by Hood and Jenkins ("Creditors") for breach of contract, and they obtained a judgment in November 1997. In December 1997, Debtor applied to convert a portion of his life insurance to whole life and paid the insurer (then Mass Mutu-

1. Honorable James S. Starzynski, United States Bankruptcy Judge, United States Bankruptcy Court for the District of New Mexico, sitting by designation.

al) approximately $30,000. CML issued a schedule showing an issue date of July 12, 1994, and a policy date of December 12, 1997. On January 6, 1998, Creditors filed an involuntary petition for Chapter 7 relief against the Debtor. Debtor consented to relief, and the Court entered an Order for relief on April 16, 1998. Eric C. Rajala was appointed trustee. Debtor listed a Mass Mutual life insurance policy on his schedule B with $28,567 of cash value. He also claimed the insurance exempt under Kan. Stat. Ann. § 40–414. Creditors objected to exemption of the Mass Mutual insurance policy arguing that, under Kansas law, insurance "issued" within one year of a bankruptcy filing is not exempt. Debtor responded that 1) the policy was not issued within one year, and 2) the statute should not apply in involuntary bankruptcy cases. The bankruptcy court held an evidentiary hearing on October 28, 1998,[2] at which Creditors introduced Exhibits 1 and 17[3] and Debtor introduced Exhibit A[4]. The Court took the matter under advisement. A new judge was later assigned to the case. She set a status conference on February 10, 2003. Thereafter the parties filed a stipulation of facts dated February 21, 2003.[5] The parties also filed supplemental briefs.[6] The bankruptcy court issued a Memorandum and Order dated April 17, 2003, sustaining the Creditors' objection to exemption of the life insurance.[7] In the Memorandum the court reviewed the documents in evidence and considered the Debtor's testimony and found that the life insurance policy was issued on December 12, 1997, which was within one year of the filing of the bankruptcy petition.[8] The court stated the well-established rules that exemption laws are to be construed liberally in favor of exemptions, and that the objecting party has the burden of proof in challenging an exemption.[9] Additionally, the court reviewed relevant case law to determine what the Kansas legislature meant when it used the term "issued on or within one year after the date that the policy is issued" in the context of a converted insurance policy.[10] Debtor timely filed this appeal.

## II. *Appellate Jurisdiction*

A Bankruptcy Appellate Panel, with the consent of the parties, has jurisdiction to hear appeals from final judgments, orders, and decrees of bankruptcy judges within the circuit.[11] A bankruptcy court's order denying a claimed exemption is a final order.[12] Neither party filed an election seeking review by the United States District Court for the District of Kansas pursuant to 28 U.S.C. § 158(c)(1)

---

2. Selected pages from the transcript of this hearing appear at Appellant's Appendix at 188–208.

3. Appellant's Appendix at 100 and at 147. Exhibit 1 is a set of Debtor and Debtor's Spouse's joint Statement of Financial Affairs and Schedules. Exhibit 17 contains a "Life Insurance Application (Part 1)."

4. Appellant's Appendix at 95. Exhibit A is "the Schedule Page" for the insurance policy.

5. Appellant's Appendix at 84.

6. Appellant's Appendix at 87; Appellees' Appendix at 100.

7. Appellant's Appendix at 212.

8. Appellant's Appendix at 222.

9. Appellant's Appendix at 216.

10. Appellant's Appendix at 218.

11. 28 U.S.C. § 158(a), (b)(1), (c)(1).

12. *See Clark v. Brayshaw (In re Brayshaw),* 912 F.2d 1255, 1256 (10th Cir.1990); *Carlson v. Diaz (In re Carlson),* 303 B.R. 478, 480 (10th Cir. BAP 2004).

and Bankruptcy Rule 8001(e); thus they have consented to our review.

### III. *Standard of Review*

■ The Bankruptcy Appellate Panel may affirm, modify or reverse a bankruptcy court's judgment, order, or decree, or remand with instructions for further proceedings. Findings of fact shall not be set aside unless clearly erroneous.[13] "A finding of fact is clearly erroneous only if the court has 'the definite and firm conviction that a mistake has been committed.' "[14] Whether the bankruptcy court erred in finding that the Debtor's insurance policy was issued within one year of the bankruptcy filing is a factual matter subject to review under the clearly erroneous standard.[15]

■ The clearly erroneous standard does not apply to the bankruptcy court's conclusions of law, which are reviewed *de novo*.[16] The bankruptcy court's interpretation of a statute is a question of law.[17] Therefore, whether the bankruptcy court erred in finding that the Debtor "filed bankruptcy" and whether the bankruptcy court properly applied the Kansas exemption law are issues subject to *de novo* review.[18]

### IV. *Discussion*

Upon filing a bankruptcy petition, a debtor's property becomes property of the bankruptcy estate subject to exemptions listed in 11 U.S.C. § 522.[19] Section 522(b) allows a state to opt out of the federal exemptions. Kansas has opted out of the federal exemption scheme.[20] Therefore, the issue is whether Debtor may exempt the cash value of his insurance policy under Kansas law.

■ Before turning to the Kansas statute, the Court observes that exemptions are "a privilege granted by the state to secure to the unfortunate debtor and his family the means to avoid destitution."[21] Under Kansas law, exemption statutes are to be liberally construed in favor of those intended by the legislature to be benefitted.[22] "Liberal construction" is not a license, however, for the Court to enlarge an exemption or read into it provisions

13. Fed. R. Bankr.P. 8013; *First Bank v. Reid (In re Reid)*, 757 F.2d 230, 233–34 (10th Cir. 1985).

14. *Gillman v. Scientific Research Prods. Inc. (In re Mama D'Angelo, Inc.)*, 55 F.3d 552, 555 (10th Cir.1995) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)).

15. *Peoples State Bank & Trust Co. v. Sayler (In re Sayler)*, 98 B.R. 536, 539 (D.Kan.1987) (Date of issuance of insurance policy is fact question reversible only for clear error.). This is the case even though the determination was based largely on documents that are equally available to this court. *See Amoco Oil Co. v. Rainbow Snow, Inc.*, 809 F.2d 656, 662 (10th Cir.1987).

16. *Lampe v. Williamson (In re Lampe)*, 331 F.3d 750, 753 (10th Cir.2003).

17. *Rushton v. State Bank (In re Gledhill)*, 164 F.3d 1338, 1340 (10th Cir.1999).

18. *See, e.g., Lampe v. Iola Bank & Trust (In re Lampe)*, 278 B.R. 205, 209 (10th Cir. BAP 2002) (citing *In re Zibman*, 268 F.3d 298, 301 (5th Cir.2001)), *aff'd*, 331 F.3d 750 (10th Cir. 2003).

19. *See* 11 U.S.C. § 522 & 541.

20. Kan. Stat. Ann. § 60–2312; *In re Lampe*, 331 F.3d at 754; *Carbaugh v. Carbaugh (In re Carbaugh)*, 278 B.R. 512, 521 (10th Cir. BAP 2002).

21. *Nohinek v. Logsdon*, 6 Kan.App.2d 342, 628 P.2d 257, 258 (1981).

22. *Id.* at 259.

that are not found there.[23] The Court also notes that the objecting Creditors have the burden of proving that the exemption is not properly claimed.[24] The exemption is presumed to be valid, and the Creditors have the initial burden of producing evidence to rebut the presumption.[25] Thereafter, the burden shifts back to the Debtor to come forward with evidence to demonstrate that the exemption was proper.[26]

The applicable Kansas statute, Kan. Stat. Ann. § 40–414, Exemption of interests in policies; exceptions, provides, in relevant part:

> (a) If a life insurance company ... issues any policy of insurance ... upon the life of an individual and payable at the death of the insured ... to any person or persons having an insurable interest in the life of the insured, the policy and its reserves, or their present value, shall inure to the sole and separate use and benefit of the beneficiaries named in the policy and shall be free from:
>
> > (1) the claims of the insured or the insured's creditors and representatives;
> >
> > (2) the claims of any policyholder or the policyholder's creditors and representatives, subject to the provisions of subsection (b)
> >
> > . . . .
>
> (b) The nonforfeiture value of a life insurance policy shall not be exempt from:
>
> > (1) Claims of the creditors of a policyholder who files a bankruptcy petition under 11 U.S.C. § 101 et seq. on or within one year after the date the policy is issued; or
> >
> > (2) the claim of any creditor of a policyholder if execution on judgment for the claim is issued on or within one year after the date that the policy is issued.
>
> . . . .
>
> (f) The provisions of subsection (b) shall not apply to that portion of the nonforfeiture value of a life insurance policy, issued on or within one year of the filing of a bankruptcy petition under 11 U.S.C. § 101 et seq. or an execution on judgment for the claim of the creditor, which is derived from the surrender of a life insurance policy issued more than one year prior to such bankruptcy petition or such execution.[27]

Debtor argues (1) that the bankruptcy court erred in finding that the insurance policy was issued within one year of his bankruptcy, and (2) that the bankruptcy court erred in finding that Debtor "filed bankruptcy" because the case was commenced by an involuntary petition. We disagree with Debtor on the first issue but agree with him on the second.

**A.** *The policy was issued within one year.*

■ The bankruptcy court made extensive findings of fact related to the pol-

23. *Id.* at 259. *Accord Johnston v. Barney*, 842 F.2d 1221, 1223 (10th Cir.1988) (applying Wyoming law.); *In re Lowe*, 252 B.R. 614, 621 (Bankr.W.D.N.Y.2000) (Under New York law liberal interpretation of exemption statute in favor of debtor does not displace ordinary rules of statutory construction. That is, an unambiguous statute is to be applied, not interpreted.)

24. Fed. R. Bankr.P. 4003(c); *Dunivent v. Bechtoldt (In re Bechtoldt)*, 210 B.R. 599, 601 (10th Cir. BAP 1997).

25. *In re Lampe*, 331 F.3d at 754; *Robinson v. Sanchez (In re Robinson)*, 295 B.R. 147, 152 (10th Cir. BAP 2003).

26. *Robinson*, 295 B.R. at 152.

27. Kan. Stat. Ann. § 40–414.

icy. Each finding has support in the record. The bankruptcy court weighed conflicting evidence and determined the policy was issued on December 12, 1997.

For example, the court found that Debtor had listed the Mass Mutual policy on his schedule B with a market value of $28,567.[28] This policy is a whole life policy with an annual premium of $3,569, a basic face amount of $100,000, and a $29,646.13 cash value as of June 9, 1998.[29]

Debtor signed and dated a new Life Insurance Application ("Application") on December 18, 1997.[30] Exhibit 17, which contained the Application, shows that Debtor, or someone on his behalf, checked two boxes at the top of the Application: one box said "New Policy as Exchange of Term Insurance" and the other box said "Conversion of Term Insurance."[31] Debtor also checked the option for "whole life" in the face amount of $100,000.[32] Debtor testified that he paid $30,000 in mid-December 1997 to obtain this whole life insurance policy.[33] Page 3 of the Application, next to block 22, states the "Policy Date" is "12–15–97."[34] The application allowed "paid-up additions" as the dividend option, an option that had not been available in the original term policy according to the Application.[35] Ultimately the Application resulted in a policy with a different policy number than the original policy, and this was a whole life policy instead of a term life policy.[36] Page 4 of the Application contained a section dealing with "Conversion, Exchange and Option Data"; it stated that term insurance policy number 6106446 was being converted.[37] This same section also contained a handwritten date of "1–1–98" as the "Date of New Policy."[38] Page 5 of the Application contains a section that stated "Complete the following only if Evidence of Insurability is Required."[39] Debtor completed the section. Page 6 authorized the insurance company to investigate Debtor's insurability.[40] Debtor signed the Application under a caveat that stated "Any policy issued as a result of a material misstatement or omission of facts may be voided, and the company's only obligation shall be to return premiums paid."[41]

Debtor's Exhibit A, purportedly a statement from Mass Mutual, stated an "issue date" of July 12, 1994, and a "Policy Date" of December 12, 1997.[42] It also stated that the issue date of July 12, 1994, was "for suicide and contestability," but the "Rider Date" was December 12, 1997. This is in contrast to a June 9, 1998, computer print-

---

28. Appellant's Appendix at 029.

29. Appellant's Appendix at 154.

30. Appellant's Appendix at 148–53.

31. Appellant's Appendix at 148.

32. Appellant's Appendix at 149, items 17 & 18.

33. Appellant's Appendix at 208, lines 1–4.

34. Appellant's Appendix at 150.

35. Appellant's Appendix at 150.

36. *Compare* Appellant's Appendix at 154 *with* Appellant's Appendix at 151.

37. Appellant's Appendix at 151.

38. *Id.*

39. Appellant's Appendix at 152.

40. Appellant's Appendix at 153. The bankruptcy court found that Debtor's testimony that he did not need to qualify for insurance to convert the policy, Appellant's Appendix at 206 lines 12–14, was controverted by the Application.

41. Appellant's Appendix at 153.

42. Appellant's Appendix at 95.

out for policy 11537541 that states the "Issue Date" as "12–12–1997."[43]

The bankruptcy court also looked to prior case law for guidance in determining what the Kansas Legislature meant when it used the term "issued" in the context of a converted insurance policy. In *Peoples State Bank & Trust Co. v. Sayler (In re Sayler),* 68 B.R. 111, 117–18 (Bankr. D.Kan.1986) *(Sayler I), rev'd on other grounds,* 98 B.R. 536 (D.Kan.1987) *(Sayler II),* the bankruptcy court construed the term "issued" in Kan. Stat. Ann. § 40–414.[44] That court quoted *Fisher v. Central Surety Insurance Corp.,* 149 Kan. 38, 86 P.2d 583, 583 (1939) for a definition of "issue":

"Ordinarily by 'issue' of an insurance policy is meant its delivery and acceptance whereby it comes into full force and effect as a binding obligation."[45]

Reviewing the policies before it, the *Sayler I* Court found that conversion of term policies into universal life policies resulted in new policies that did not relate back to the original issuance of the term policies converted.[46] The *Sayler* debtors challenged that finding on appeal to the District Court, which affirmed on this issue.[47] As in *Sayler,* Debtor converted term life insurance to whole life within one year of bankruptcy, and the conversion resulted in issuance of a new policy.

The bankruptcy court also examined *Sonderegger v. United Investors Life Insurance Co.,* 16 Kan.App.2d 764, 829 P.2d 605, 607 (1992):

The general rule is that where an insurance policy is issued under a conversion option, whether a new, distinct, and independent contract results will depend upon the extent to which the terms of the substituted policy differ from the terms of the policy containing the option.

The bankruptcy court then listed seven indicia that the converted policy in this case was in fact a new, distinct, and independent contract.

There was competent evidence in the record that the policy was issued on December 12, 1997. The bankruptcy court did not commit clear error when it so found.

### B. The Debtor did not "file a bankruptcy petition."

Debtor claims that he did not "file bankruptcy" as that term is used in Kan. Stat. Ann. § 40–414 because an involuntary petition was filed against him. We agree.

 State laws are interpreted according to the state's rules of statutory construction.[48] In Kansas, "[t]he fundamental rule of statutory construction is

**43.** Appellant's Appendix at 154.

**44.** Prior to 1984, Kan. Stat. Ann. § 40–414 permitted virtually unlimited funds to be exempted. *Sayler I,* 68 B.R. at 118. In 1984 the statute was amended, and § (b)(1) eliminated the exemption for policies obtained within one year of bankruptcy "if the policy was obtained by the debtor for the purpose of defrauding one or more of the debtor's creditors." *Id.* at 119 n. 7. In 1988 the statute was again amended to its current version, eliminating the requirement of proving fraud. *Peoples State Bank & Trust Co. v. Sayler (In re*

*Sayler),* 98 B.R. 542, 544 n. 1 (D.Kan.1989) *(Sayler III).*

**45.** *Sayler I,* 68 B.R. at 117.

**46.** *Id.* at 118.

**47.** *Sayler II,* 98 B.R. at 539. The Court reversed and remanded on the legal standard that the bankruptcy court had used to determine fraud. *Id.* at 541.

**48.** *Citizens for Responsible Gov't State Political Action Comm. v. Davidson,* 236 F.3d 1174, 1190 (10th Cir.2000).

that the purpose and intent of the legislature governs when the intent can be ascertained from the statute."[49] "When a statute is plain and unambiguous the court must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be."[50]

■ We conclude that Kan. Stat. Ann. § 40–414 is facially plain and unambiguous. It reflects a legislative intent that, as a general rule the cash value of insurance policies is exempt with no dollar limitation, Kan. Stat. Ann. § 40–414(a); but, as an exception to the general rule, insurance issued within one year before a voluntary bankruptcy filing or before execution on a judgment is not exempt. Kan. Stat. Ann. § 40–414(b). This interpretation is reinforced by Kan. Stat. Ann. § 40–414(f), which operates as an exception to the exception by preserving the exemption to the extent it represents the cash value of a surrendered policy that was issued more than one year before the bankruptcy. Furthermore, as the bankruptcy court noted, by removing the requirement to prove fraud, the legislature made it clear that the debtor's motive is irrelevant. In this case, Debtor placed $30,000 into a new insurance policy, and in the year following, he neither filed a bankruptcy petition nor did the Creditors execute on their judgment.

Section 40–414 is directed at "a policyholder who files a bankruptcy petition under 11 U.S.C. § 101 et seq." The term "files" suggests if not compels the conclusion that the policyholder is the person who must take the action, not the creditor. This interpretation is not demonstrably contrary to the purpose of the statute, nor does it lead to an absurd result.[51] The legislative history of the Code provides explicitly that a debtor may engage in pre-bankruptcy exemption planning. In consequence, without the Kansas statute, it is easily conceivable that a policyholder (debtor-to-be) would obtain or convert a policy and then within one year file a petition in order to protect the newly acquired asset. By doing so, the policyholder/debtor would, in the absence of the statute, prevent a creditor from gaining access to the asset. The statute precludes that from happening.

On the other hand, if the policyholder acquires or converts a policy and then does not file a bankruptcy petition, the policyholder remains vulnerable to creditors for at least a year following the issue date of the new policy. Kan. Stat. Ann. § 40–414(b)(2). In this instance, for example, the Creditors had a period of one year following the date of the issuance of the policy—December 12, 1997—to have executed on the judgment they had obtained in November 1997, and thereby defeat the exemption. The statute thus appears to embody a quite reasonable policy. But even if it were the case that there were no discernible public policy reasons to allow certain exemptions only to involuntary

49. *Brabander v. Western Cooperative Electric,* 248 Kan. 914, 811 P.2d 1216, 1218 (1991).

50. *Id.* at 1219. *Compare Lamie v. United States Trustee,* —— U.S. ——, ——, 124 S.Ct. 1023, 1030, 157 L.Ed.2d 1024 (2004) ("It is well established that when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.") (Internal quotation marks and citations omitted.) (discussing Bankruptcy Code.)

51. *See Lamie,* —— U.S. at ——, 124 S.Ct. at 1030 (The statute must be interpreted according to the plain language unless the result is demonstrably contrary to the purpose of the statute or leads to an absurd result.)

debtors, our obligation is to defer to the legislature's decision.

In his brief, Debtor lists various Kansas statutes that, arguably, differentiate between voluntary and involuntary petitions. Debtor's references to statutes that distinguish between voluntary and involuntary petitions demonstrate that the Kansas legislature knew how to differentiate between voluntary and involuntary petitions. By its use of the language "a policyholder who files a bankruptcy petition," the legislature selected voluntary petitions and excluded involuntary petitions.

It is true that the Kansas statute refers to a "bankruptcy petition under 11 U.S.C. § 101 et seq."—in other words, the entire Bankruptcy Code—and included in the Code of course is § 303, which provides for the filing of involuntary petitions. But this argument proves too much, because there are numerous provisions of the Code that are not applicable to this statute; indeed, the vast majority of the Code provisions have nothing to do with the subject matter of this Kansas statute.

Of course, it may be that the Kansas legislature, when it drafted the statute, intended to include a policyholder against whom an involuntary petition is filed, and if given the opportunity, would say so. However, we can only decide the case based on the statute as it exists; and if the legislature has not written the statute as clearly as it might, it must be the legislature and not we who correct the supposed error.[52] And it would especially be the province of the legislature to rewrite the statute if we have interpreted the statute correctly and the legislature wishes to change it as a result of this decision.

Trustee and the Creditors point out that, as the bankruptcy court found, Debtor consented to the Order for Relief.[53] In large part, then, after that consent the bankruptcy case stood in the same posture as if Debtor had voluntarily filed. But a (voluntary) consent to an involuntary filing is procedurally and substantively not the same as the Debtor voluntarily filing. And treating the two as the same in this context could have the unwholesome effect of encouraging involuntary petitions in order to get around the statute.[54] Worse, it could encourage or even require debtors to litigate to the bitter end (including perhaps an appeal to the circuit) an involuntary petition, in order to avoid consenting to the involuntary petition and therefore being deemed to have in effect filed a voluntary petition. That is a result that would benefit no one.

We therefore conclude that the bankruptcy court incorrectly interpreted the statute on this issue.

## V. *Conclusion*

The bankruptcy court correctly determined that the issuance date of the converted policy but incorrectly applied the Kansas insurance exemption to the facts of

---

52. *Lamie,* —— U.S. at ——, 124 S.Ct. at 1034 ("If Congress enacted into law something different from what it intended, then it should amend the statute to conform it to its intent. 'It is beyond our province to rescue Congress from its drafting errors, and to provide for what we might think ... is the preferred result.' ") (quoting *United States v. Granderson,* 511 U.S. 39, 68, 114 S.Ct. 1259, 127 L.Ed.2d 611 (1994) (concurring opinion.))

53. Appellant's Appendix at 15 (courtroom minute sheet).

54. On the other hand, it is not clear why a creditor would want to take the involuntary petition route, thereby making available to all the creditors the insurance asset, rather than, as the statute permits, executing on the asset solely for the benefit of the creditor. Kan. Stat. Ann. § 40–414(b)(2).

this case. We therefore AFFIRM IN PART AND REVERSE IN PART.